(No. 18394.—Judgment reversed and award set aside.)
THE NEW STAUNTON COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ETTA SOUTHERS, Defendant in Error.)

*Opinion filed December 21, 1927.*

1. WORKMEN'S COMPENSATION—*claimant must prove death of employee resulted from accidental injury.* Where compensation is claimed for the death of an employee the burden is on the claimant to prove that the death resulted from an accidental injury which arose out of and in the course of the employment, and the proof must be either direct evidence or circumstantial evidence from which such inference may be fairly drawn.

2. SAME—*when furnishing medical and surgical aid is not an admission of accidental injury.* Where there has been an accidental injury to an employee, and the employer, with knowledge of that fact, furnishes medical, surgical and hospital services, it will be deemed a payment of compensation and waiver of the notice provided by section 24 of the Compensation act; but where there is no proof of an accidental injury, the fact that the employer sent the employee to the company doctor for treatment or for an operation cannot be regarded as an admission of the employer that the employee sustained an accidental injury in the course of the employment, so as to relieve a claimant for compensation for the death of the employee of the burden of proving an accidental injury resulting in death.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

WILLIAMSON, BURROUGHS and SIMPSON, (R. H. DAVIS, of counsel,) for plaintiff in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This court allowed a writ of error on the petition of the New Staunton Coal Company to review a judgment of the circuit court of Madison county confirming an award to defendant in error, Etta Southers, widow of Willis Southers, made upon her application, alleging that on the 15th day of April, 1925, her husband, while employed in the

mine of plaintiff in error, received an injury arising out of and in the course of his employment, from which he died May 11, 1925. The arbitrator made an award in favor of the widow for $3750, payable $14 a week for a period of 267-6/7 weeks. The award was confirmed by the Industrial Commission on review, and by the circuit court, where it was taken for review upon a writ of *certiorari.*

Plaintiff in error denies that deceased sustained an accidental injury in the course of his employment which resulted in death May 11, 1925.

The case was tried upon a stipulation and the evidence of witnesses. It was stipulated that the parties were on April 15, 1925, operating under the provisions of the Workmen's Compensation act; that notice of the alleged injury was given plaintiff in error and demand for compensation on account thereof made within the time required by the Compensation act; that first aid, medical, surgical and hospital services were furnished by plaintiff in error but no money was paid on account of the alleged injury. The stipulation reads: "It is not agreed, however, that Willis Southers, on the date above mentioned, sustained an accidental injury arising out of and in the course of his employment. * * * The questions in dispute are whether or not Willis Southers on April 15, 1925, sustained an accidental injury arising out of and in course of employment which resulted in his death on May 11, 1925, and the question of dependency." No question is raised by the briefs about dependency, but the controverted question is whether the proof showed deceased received an accidental injury in the course of his employment which resulted in his death.

The deceased was employed in the mine of plaintiff in error as a loader. Defendant in error, Etta Southers, testified that when deceased left home the morning of April 15, 1925, he looked all right. He returned home about two o'clock in the afternoon in his car, which he drove to and from the mine. He did not look as well as he did

that morning—was humpbacked or stooped over. On February 15, 1924, he had been operated on for a duodenal or stomach ulcer and did not return to work until October following. Defendant in error testified that when her husband sat down she saw "he was getting big where he was operated on, in the groin." He let down his clothes so the witness could see where he was operated on. She testified she had seen that scar before and noticed the bulging there ever since the scar was made in the operation. Deceased lay down and stayed around home until plaintiff in error sent him to Dr. Zoller, at the Litchfield Hospital, May 5, 1925. Dr. Zoller performed an operation for ventricle hernia on May 7. The witness did not know of deceased seeing any other doctor before going to Dr. Zoller. He died in the hospital about a week after he went there. Dr. Hirschliter was deceased's physician, but the witness did not know whether deceased visited him after the 15th of April or not. She testified that ever since the operation for stomach trouble, in 1924, there had been trouble with the scar "on account of its bulging on him;" that it was very much larger the 15th than it had been before; that before the 15th it was not as large as a hen's egg but after that date it was bigger than a hen's egg; that she did not see the scar very often, but the last time she saw it prior to April 15 it was bulging.

Dr. Sihler testified he operated on deceased for a duodenal ulcer of the stomach February 15, 1924. The gall bladder was also removed. The patient made a slow but complete recovery from then on, but there was a little separation of the upper end of the wound, which lasted about four weeks and gradually healed. In October, 1924, the doctor told deceased he might return to work. The doctor testified there was no bulging at that time and he thought deceased was all right. He testified he met deceased in the hall in the spring of 1925 and he complained of a rupture and wanted the doctor to fix it. He never returned under

the doctor's care.    After the operation deceased developed
bronchitis or a bronchial cough.    The separation took place
in the upper end of the wound.    The doctor strapped him
again and kept him as quiet as he could and under his care
until October.

Dr. Zoller testified deceased came to him for examination May 5, 1925.    He found a ventricle hernia through a
scar from the operation performed a year before.    He operated for the hernia May 7.    He described the operation
and testified the patient was returned to bed, and the first
day after the operation his pulse was 80 and temperature
99.4, which was to be expected after an operation.    The
8th of May the patient had a temperature of 100.4, pulse 80.
There was nothing unusual in his condition.    On the 9th
he was very restless, suffered headache, his temperature
was 102, pulse 140, which meant he was developing a
mixed infection in the post-nasal space.    The doctor made
smears from the throat and sent them to the laboratory,
where many streptococci were found but no diphtheria
bacilli.    He also sent a smear to the State Board of
Health the evening of the 9th and gave the patient anti-
streptococcus serum.    On the 10th he found diphtheria
bacilli, and gave diphtheria antitoxin because the patient
had diphtheria.    On the 10th the patient's temperature was
105, pulse 130.    He gradually grew worse and died on the
11th.    There was no infection in the incision.    The patient
died from mixed diphtheria infection.    There was no diph-
theria in the hospital or in Litchfield, and through inquiry
the doctor found there was none in the neighborhood where
the patient lived.    A Sister in the hospital doing laboratory
work testified that on the first examination made of speci-
mens from deceased, which was the 9th of May, a few
streptococci were found but no diphtheria bacilli.    She made
another examination from a specimen which she took from
the patient on the 10th.    The specimen was taken from the
throat with a swab.    She sent a specimen to the State

Board of Health the same day it was taken, and the report of the board was introduced in evidence and stated diphtheria bacilli were present. That is, we believe, the substance of the material evidence.

The only brief filed in the case is the petition of plaintiff in error for a writ of error. It was not answered by defendant in error and no brief has been filed by her since the allowance of the writ. We have many times held that the burden is on the claimant to prove that an accidental injury resulting in death arose out of and in the course of the employment, and the proof must be either direct evidence or evidence from which such inference may be fairly drawn. Some of the cases are, *St. Louis Smelting Co.* v. *Industrial Com.* 298 Ill. 272; *Ideal Fuel Co.* v. *Industrial Com.* id. 463; *Dietzen Co.* v. *Industrial Board*, 279 id. 11.

Plaintiff in error in its petition for the writ of error says it was not seriously contended by counsel for defendant in error in the circuit court that there was any satisfactory or competent proof of an accidental injury April 15, 1925, arising out of and in the course of deceased's employment, but that by sending deceased to the hospital for an operation by Dr. Zoller, plaintiff in error's doctor, it admitted an accident to deceased arising out of and in the course of his employment, and if he died as a result of an operation growing out of the accident plaintiff in error was liable to pay compensation; that furnishing surgical aid to deceased was an admission of liability of plaintiff in error and did not require proof on that issue by the applicant. As no brief of any kind has been filed by defendant in error, we, of course, cannot know what her position was or is. Section 24 of the Compensation act requires notice of the accident to be given the employer as soon as practicable, not later than thirty days after the accident, with certain exceptions, and claim for compensation to be made within six months, "or in the event that payments have been made under the provisions of this act, unless written claim for

compensation has been made within six months after such payments have ceased." In this case there was no competent or legal proof that deceased received an accidental injury April 15, 1925, arising out of and in the course of his employment. The proof showed the immediate cause of death was a mixed diphtheria infection, following within a few days after an operation for hernia. The evidence showed this hernia to have existed prior to April 15. For some reason plaintiff in error sent deceased to its doctor at the Litchfield Hospital on May 5, 1925, to be operated on for hernia, if necessary. There is no proof that the hernia condition was aggravated by any accident in the mine or growing out of deceased's employment. We must assume that plaintiff in error paid the doctor for his services and paid the hospital bill. We do not think that it can, in reason and justice, be said that this act of plaintiff in error must be construed as an admission that an accident occurred and that plaintiff in error is liable. In several cases we have decided that where there was an accidental injury in the course of employment and the employer furnishes medical, surgical and hospital services it should be regarded as payment of compensation and a waiver of notice. Notice of accident and claim for compensation required by section 24 are jurisdictional, but may be waived, as we have held in a number of cases, by paying compensation. The cases in which it has been held furnishing by the employer to the employee medical, surgical and hospital services must be regarded as payment of compensation were cases in which there was an accidental injury to the employee arising out of and in the course of the employment but the employer denied notice of the accident had been given or demand for compensation made, as provided by section 24. The object and purpose of section 24 is to inform the employer of an accidental injury and that compensation is demanded. Where the employer has that knowledge without notice or demand, as provided by sec-

tion 24, the object and purpose of that section has been accomplished, and giving the formal notice is unnecessary to give the commission jurisdiction of the case.   Where there has been an accidental injury to the employee, and the employer, with knowledge of that fact, furnishes medical, surgical and hospital services, it will be deemed a payment of compensation and waiver of the notice provided by section 24.   (*Field & Co.* v. *Industrial Com.* 305 Ill. 134;   *Central Car Works* v. *Industrial Com.* 290 id. 436; *Jackson* v. *Industrial Com.* 302 id. 281.)   In *Yellow Cab Co.* v. *Industrial Com.* 315 Ill. 235, it was held a mistake in giving notice of the accident is not a bar to proceedings for compensation unless the employer shows he is unduly prejudiced by such mistake, and that the furnishing of medical, surgical and hospital services must be regarded as payment of compensation, and the employee in such case is not required to give the notice provided for by section 24. *Donk Bros. Coal Co.* v. *Industrial Com.* 325 Ill. 193, is to the same effect.   In all those cases there was an accidental injury suffered by the employee in the course of and arising out of his employment.   The furnishing of medical, surgical and hospital services by the employer was conclusive that he had knowledge of the claim of accidental injury and admitted it by furnishing the medical, surgical and hospital services.   He could not thereafter be permitted to deny that he had knowledge of what section 24 provided should be given him.

In the case under consideration there is no proof that there was an accidental injury to the employee on April 15, arising out of and in the course of his employment.   The evidence shows he had a hernia or bulging in the groin from an operation performed the year before, and plaintiff in error sent him to Dr. Zoller for treatment, and an operation if necessary.   As there was no proof of any accidental injury at that time, sending the employee to the doctor to be treated or operated on cannot be held sufficient to estab-

lish an accidenal injury, and the act of plaintiff in error in sending him to a doctor for services cannot be held an admission that there was an accidental injury, in the absence of any proof whatever that there was. If the motive and object of plaintiff in error in sending deceased to a doctor for treatment were merely a benevolent act to aid a popular employee who had been ailing for some time, it would seem unjust to hold that the act conclusively admitted and established the employee had received an accidental injury where there is no proof of such injury whatever. As we have said, in the cases where it has been held furnishing such services to the employee is a payment of compensation there was an accidental injury to the employee which the employer recognized and admitted by furnishing medical, surgical and hospital services without the notice provided in section 24. In those cases payment of compensation was resisted because the notice had not been given, and the court held the notice was not required where the employer furnished the services to the employee, because the employer already had the information that notice would have afforded him.

It is stipulated that plaintiff in error did not admit deceased received an accidental injury April 15 arising out of and in the course of his employment, and that was the question in dispute. Something may possibly have occurred on that day to aggravate the hernia condition of deceased, but there was no proof that it occurred in the course of his employment, and it is just as possible that it may have occurred some other way and in some other place as that it arose out of and in the course of the employment. The burden was on defendant in error to prove deceased sustained an accidental injury April 15 arising out of and in the course of his employment. There is an utter lack of proof to establish that fact, and unless the fact that plaintiff in error sent him to a hospital for treatment conclusively establishes that fact, defendant in error was not entitled to·

compensation. In the absence of any proof of an accidental injury to the deceased April 15 arising out of and in the course of his employment it cannot be held that sending him to a hospital for treatment established the fact of an injury on that day and was an admission of it by plaintiff in error, when the stipulation shows that plaintiff in error denied any such injury had occurred.

We are of opinion that under the proof defendant in error was not entitled to any award. It is therefore set aside and the judgment of the circuit court reversed.

*Judgment reversed and award set aside.*