(No. 21702.—

F. W. WOOLWORTH COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOSEPH C. VEIHL, Defendant in Error.)

*Opinion filed June 22, 1933.*

HENRY KNELLER, and GEORGE W. HUNT, for plaintiff in error.

Mr. JUSTICE STONE delivered the opinion of the court:

A writ of error has been awarded in this cause to review the judgment of the circuit court of Adams county confirming an award of compensation by the Industrial Commission for an accident received by defendant in error while employed by plaintiff in error.

The application to the Industrial Commission for compensation was filed November 15, 1929, and represented that on February 2, 1927, the applicant was injured by rea-

son of an accident arising out of and in the course of his employment with plaintiff in error; that the injury was received while the applicant was unpacking and examining bulbs imported from China, and that the accident was caused by bacteria. The application further states that medical and hospital treatment were furnished by plaintiff in error to the amount of $354 from February 2, 1927, to July, 1929, which included $15 per week for ten weeks' temporary total disability. The application states that the defendant in error is suffering from complete and permanent disability.

The questions in the record are (1) whether there was an accidental injury; (2) if so, whether it arose out of and in the course of the employment and the nature and extent of it; and (3) whether the statute as to proof of notice and claim for compensation has been complied with.

Defendant in error testified that he was employed by plaintiff in error at its store in the city of Quincy until the 28th of September, 1929; that on the second day of February, 1927, there was received at that store a shipment of Chinese bulbs; that he received and unpacked them in accordance with his duties; that the bulbs were packed in soil, and that at the bottom of the package this soil was damp and some of the bulbs had sprouted and some were decayed. He testified that he wiped off the dirt and sorted the bulbs and put them into a dark bin to prevent further sprouting; that he did not have gloves on his hands while he was doing this work and he was so engaged for about an hour and a half. He stated that his health for a period of six months prior to that time had been good and that he had not had any attacks of dysentery during that time but that about three days after unpacking the bulbs he began to be affected with dysentery, which from time to time has bothered him since; that he first tried home remedies without relief, and that on the 14th of February he went to see his physician. He further testified that none of the

members of his family or his friends or neighbors with whom he had been in contact had any similar affliction, and that so far as he knew there was nothing similar to it in the city of Quincy. He testified that he washed his hands immediately after handling these bulbs, and though he did not use a disinfectant he used soap. He testified that notwithstanding treatment by his physician he continued to get worse and in July, 1927, he was sent to the hospital; that between February 5, the time of the first attack, and July following, he would work a week or two and then would have to lay off for several days or a week. He testified at the time of the hearing he was still troubled with this ailment. He also stated that on Otober 27, 1927, he received from his employer $278.50, on May 28, 1928, $70, and during July, 1929, $31.50; that the first payment was for the hospital bill and doctor bill and $15 a week for his salary for a period of fifteen weeks, and that the two other payments were for his doctor. He testified that he made various attempts to secure employment after his employment with plaintiff in error ceased but has been unable to do so because of his ailment. He further testified that his physician told him, after he went to the hospital, that he had amœbic dysentery. He testified on cross-examination that after removing the dirt from the bulbs he had washed his hands; that he did not remember that he had placed his hands to his mouth while he had any of the dirt of the bulbs on them and that he could not recall that he did.

His physician testified that the defendant in error consulted him about the 14th of February, 1927; that he diagnosed his difficulty as diarrhœa; that he did not see him again until the 31st of May, and that on the 23d of July he sent him to the hospital, where he found, through a laboratory analysis, that defendant in error was suffering from amœbic dysentery. He testified that from his reading he had learned that amœbic dysentery is contracted by the introduction of the germ into the alimentary canal

through the mouth. He also testified that from his reading he had learned that it is a germ commonly found in the Orient. He was asked if he had an opinion as to whether a person, by handling lily bulbs imported from China, packed in their native soil, could contract amœbic dysentery by the introduction of amœba germs from such a package into his mouth. He stated that he was of the opinion such could occur. He was asked whether from the statement of the facts then detailed and his experience as a physician and surgeon, "assuming that there was no other cause of amœbic dysentery with which the claimant came in contact during the period between January 1, 1927, and July 1, 1927," he had an opinion as to the source of infection suffered by the applicant. Over objection of counsel he was permitted to state that in his opinion the probable source of the amœbic dysentery contracted by the claimant was the handling of the Chinese bulbs. He also testified that amœbic dysentery germs appear in epidemics in this country; that from what he had read he had been informed that such infection may come from many sources, as from drinking water, or food, such as green vegetables, if the organism is present in those vegetables, or from raw vegetables that grow in dirt. He also testified that while he had found considerable difference of opinion as to the ordinary period of incubation for the development of the amœba before the dysentery appears, he was of the opinion that it requires from twenty to ninety days to incubate. He stated that he did not examine the soil in which the lily bulbs had been packed. There is no evidence of any examination of that soil and no other evidence of the existence of amœba germs in it.

The medical testimony offered by plaintiff in error was that there is no limitation of amœbic dysentery to localities but that it occurs throughout this country; that it is generally estimated that a minimum of five to ten per cent of the people having dysentery are infected with amœba;

that it may attack anyone; that it is not limited to any occupation but is found in patients of various occupations; that it may be contracted through food or drink, and that it is necessary that the germ enter the alimentary canal through the mouth. He also testified, in agreement with defendant in error's physician, that the germs causing amœbic dysentery incubate in from twenty to ninety days, with the average time of incubation a little less than sixty days. In answer to a hypothetical question involving the facts set out in this record, he stated that it was impossible that there be any causal connection between the handling of the bulbs on the second day of February and the dysentery which began three days later.

There appears to be no disagreement in the record as to the required time for incubation of this germ. The record is that dysentery is not produced until the amœba germ has incubated and thus changed form. Defendant in error's testimony is that dysentery appeared the third day after he had handled the bulbs. From the evidence of both the plaintiff in error and defendant in error on this point it is clear that there is no proof that the defendant in error contracted amœbic dysentery by the handling of the bulbs on February 2, 1927. In fact, the proof of both parties shows that such was not possible. There is no evidence that the soil around these bulbs contained such germs, and no evidence amounting to more than conjecture that they are more likely to be found in soil coming from China than in many other places. The burden was on defendant in error to prove that he received an accidental injury which arose out of and in the course of his employment. Such proof must be either by direct testimony or by evidence from which such inference may be fairly drawn. *New Staunton Coal Co.* v. *Industrial Com.* 328 Ill. 89; *St. Louis Smelting Co.* v. *Industrial Com.* 298 id. 272; *Ideal Fuel Co.* v. *Industrial Com.* 298 id. 463; *Dietzen Co.* v. *Industrial Board,* 279 id. 11.

There is no evidence in the record from which more than a conjecture may be drawn that defendant in error contracted the disease, from which he has been suffering, on February 2, 1927, while handling bulbs. His physician testified that from the history given him by defendant in error and from an examination made in the hospital in July, 1927, it was probable that defendant in error had contracted the disease from handling those lily bulbs. This is inconsistent with his own testimony that the time required for incubation of such germs was from twenty to ninety days. There is no evidence in the record even pointing to any other less period in which such germs can incubate. The testimony of both medical witnesses is in entire agreement on that matter. The irresistible conclusion therefore arises that the finding that this defendant in error received an accidental injury arising out of and in the course of his employment is contrary to the undisputed proof of essential facts.

Other questions pertaining to the giving of notice and filing of the application of claim, and the contention of plaintiff in error that such were not done in the manner and within the time required by the statute, it is unnecessary to consider.

Under the undisputed testimony in this record defendant in error has not shown that the injury received arose out of or in the course of his employment. The finding of the commission and the circuit court is therefore without sufficient basis in the evidence, and the judgment of the circuit court is reversed and the award set aside.

*Judgment reversed and award set aside.*