(No. 24162.—)

ARMOUR & COMPANY, Plaintiff in Error, *vs.* THE INDUS-TRIAL COMMISSION *et al.*—(HENRIETTA HOLMES, Defendant in Error.)

*Opinion filed December 15, 1937.*

CHARLES J. FAULKNER, JR., WALTER C. KIRK, and JOHN P. DOYLE, for plaintiff in error.

NORMAN PETERS, for defendant in error.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

An arbitrator, the Industrial Commission and the superior court of Cook county found that Henrietta Holmes was entitled to compensation on account of the death of her husband, John Holmes, which occurred June 23, 1935. The cause is here by writ of error.

On February 10, 1935, John Holmes and his employer, Armour and Company, were operating under the provisions of the Workmen's Compensation act. Holmes had worked in the refrigerating plant of that company for several years as an engineer. He went to work at 11:00 o'clock Saturday night, February 9, and when another engineer, Patrick Murphy, came to relieve him shortly before 7:00 o'clock Sunday morning, Murphy noticed ammonia fumes in the building. As Murphy approached the ammonia pumps, Holmes ran towards him and told Murphy that the two-inch suction line had broken. Holmes then had a gas-mask "hanging on his body, not on his face." Holmes shut off the main suction valve and Murphy shut off the main discharge valve. It was Holmes' duty to make an entry of the break in the log-book and to report any injuries that occurred, and Murphy's duty to do these things if Holmes was unable to make such entry and report. Murphy made the entry in the log-book. Shortly after 7:00 o'clock that morning, Adam Wilson, an electrical engineer employed by the same company, found Holmes lying on the floor of the building, about 150 feet from the broken ammonia pipe. Holmes was then wearing his gas-mask. Wilson picked him up and took him out into the fresh air. The gas-mask was removed and Holmes vomited. When Holmes reached his home, he was having difficulty with his breathing and had a cough. He had been in good health prior to this, with the exception of six weeks illness about October, 1934. After February 10, his appetite was not good; he slept poorly and had to be propped up with pillows as an aid to his breathing. He lost weight, became sick, and was sent home from the plant March 26; spent three weeks in the West Side Hospital; remained at home for a few weeks and then was sent to the Cook County Hospital where he died after thirteen days.

The parties stipulated that the questions in dispute were: Did John Holmes sustain an accidental injury which arose out of and in the course of his employment, resulting in his death, and was notice given to Armour and Company, within the time required by the Workmen's Compensation act?

John Home, also called Scotty, was the deceased's foreman. He testified that he knew about the break in the ammonia suction pipe, but denied having a conversation about the accident with James Holmes, the brother of deceased.

James Holmes testified that for several years he, also, had been employed by Armour and Company as an engineer in its refrigerating plant. In 1935 he was the employee representative of the company union. He testified that he not only told the foreman, Home, about the ammonia fumes overcoming the deceased, but he complained to the foreman that other engineers were there who did nothing to help the deceased. He said this conversation took place the latter part of February or early in March, 1935. His cross-examination showed he was uncertain as to the exact date.

The situation here is somewhat like that in *Savin* v. *Industrial Com.* 342 Ill. 41. We held there that the evidence was sufficient to justify the finding of the arbitrator and commission that notice had been given in accordance with the statute and that we would not disturb such a finding unless it was against the manifest weight of the evidence. Plaintiff in error relies on our holding in *Bushnell* v. *Industrial Board,* 276 Ill. 262, to support its contention that the proof of notice in this case is insufficient. However, in *Consumers Co.* v. *Industrial Com.* 364 Ill. 145, 148, in discussing the matter of notice, we said: "On the authority of *Haiselden* v. *Industrial Board,* 275 Ill. 114, and *Bushnell* v. *Industrial Board,* 276 id. 262, it is urged that there was no notice of the accident within thirty

days after it happened; that this want of notice is jurisdictional and for this reason there can be no recovery." We then pointed out that the widow of the deceased employee had suggested in a conversation with a Mr. Baker, another employee of the company, within thirty days after her husband had disappeared, that he might have fallen into the river and drowned. After calling attention to the provisions of the section on notice, and stating that none of its provisions can be ignored in arriving at its true meaning, we referred to our holding in *Raymond* v. *Industrial Com.* 354 Ill. 586, to the effect that the central thought and intention of the legislature was that such latitude and liberality in the matter of notice should be indulged as is consistent with the protection of the employer against unjust concealment of claims.

In *New Staunton Coal Co.* v. *Industrial Com.* 328 Ill. 89, 94, we said: "Where the employer has that knowledge without notice or demand, as provided by section 24, the object and purpose of that section has been accomplished, and giving the formal notice is unnecessary to give the commission jurisdiction of the case." There is no concealment suggested in the case before us. The testimony was sufficient to warrant the finding that notice was given the employer within the thirty days.

The remaining contention is that the testimony failed to show that Holmes was injured and that the injuries, if any, were the cause of his death. It is not disputed that the two-inch ammonia suction line broke and that ammonia fumes were released. James Holmes testified as to the results of such fumes on persons exposed to them. Murphy testified that he detected ammonia when he came to the building that Sunday morning and said Holmes ran towards him and had his gas-mask on his body, but not on his face, at the time. Adam Wilson testified that he carried Holmes out into the fresh air, twenty or twenty-five minutes later. At this time Holmes had the mask on. It

was removed and he vomited. Mrs. Holmes testified that Holmes had a cough, shortness of breath, etc., thereafter. The testimony also shows the chemical make up of ammonia and its action when exposed to the air as well as its action on human beings exposed to the fumes. It attacks the mucous membrane, particularly, and according to Dr. Frank J. Moskal's testimony, it causes irritation in the respiratory organs and results in a toxic condition. This witness also testified that when he was called to treat Holmes, the latter part of March, he had a bad bronchitis. He also had a bad heart and diseased kidneys. His testimony as to the heart and kidneys is borne out by the testimony of Dr. J. J. Kearns, the coroner's physician who performed an autopsy on Holmes' body. Dr. Kearns did not believe that Holmes' death was due to ammonia fumes. It was his opinion that the heart, kidneys, bladder, prostate gland and spleen were diseased and that these conditions, and the pneumonia which developed when Holmes was in the Cook County Hospital, were the causes of death. However, Dr. Kearns admitted that if Holmes was shown to have been almost suffocated by ammonia so that he gasped for breath and was knocked out, this would make a difference in his opinion as to the causal connection between the exposure to ammonia fumes and his death.

Adam Wilson's testimony as to Holmes' condition on the morning of Sunday, February 10, 1935, shows that Holmes was overcome when Wilson carried him out of the plant into the fresh air.

The plaintiff in error contends that it was improper to include in a hypothetical question asked of the witness, Dr. S. I. Weiner, the matter of the bronchitis testified to by Dr. Moskal, on the theory that this amounted to including opinion evidence instead of a fact. Dr. Moskal testified that this is what he found and although he did not show bronchitis as one of the things Holmes was suffering from, in making the hospital chart which was in evidence, that

chart did show the treatment given for bronchitis Dr. Moskal said he prescribed for that condition. This fact was one properly to be included in the hypothetical question.

Dr. Weiner was asked the hypothetical question referred to. It incorporated the physical condition of the deceased before February 10, 1935, his exposure to ammonia fumes at the Armour and Company plant on February 10, the symptoms thereafter, the findings of the attending physicians made while Holmes was at the West Side Hospital, the results of the urinalysis made at that hospital, the diet and medicines prescribed, the diagnosis made by the attending physicians when Holmes was at that hospital, his symptoms after he left that hospital, his confinement in the Cook County Hospital and the findings made by Dr. Kearns, who was the coroner's physician. In reply to the question Dr. Weiner stated that, in his opinion, there was a causal connection between the alleged exposure and the condition of ill-being that followed, and the death of Holmes.

Dr. Weiner's testimony as to a toxic condition following exposure to ammonia fumes is coupled with the statement that the coughing and gasping and choking which appeared after Holmes was exposed to the ammonia fumes was due to the heart condition which was found when the autopsy was performed, as well as to the exposure to the fumes. He stated that an infection will result from exposure to ammonia and that the weakened condition of the person thus infected may result in such further infections as those Holmes was shown to have had in his urinary organs.

We cannot agree with plaintiff in error's contention that it is necessary to found a presumption on a presumption or to draw an inference from an inference to demonstrate that Holmes was overcome by the escaping ammonia on Sunday morning, February 10, 1935. There is sufficient direct testimony, and there are sufficient circum-

stances, to fully prove the fact that he was thus overcome. In *Banner Tailoring Co.* v. *Industrial Com.* 354 Ill. 513, and *Sparks Milling Co.* v. *Industrial Com.* 293 id. 350, we held that proof of the necessary facts may be by circumstantial, as well as by direct, evidence. In the case before us the injury was sufficiently proved by both direct and circumstantial evidence.

Plaintiff in error relies on *Burns* v. *Industrial Com.* 356 Ill. 602, in support of its contention that there is no proof, here, as to the strength of the ammonia released when the break occurred. What we have said as to proof of an injury would be sufficient by way of answer to this contention, but there is ample testimony to show that this was free anhydrous ammonia; that it was dangerous; that gas-masks were required; that Holmes had and used a gas-mask in shutting off one of the valves to stop the escape of the ammonia and that he was overcome and knocked out by the fumes.

It is the province of the Industrial Commission to draw reasonable inferences from facts and circumstances in evidence and its findings on contested issues of fact will not be set aside unless they are manifestly against the weight of the evidence. (*Lewin Metals Corp.* v. *Industrial Com.* 363 Ill. 74.) In the case before us, there was evidence from which the Industrial Commission could reasonably find that Holmes sustained an accidental injury which arose out of and in the course of his employment and which later caused his death.

The judgment of the Superior Court of Cook County is affirmed.

*Judgment affirmed.*