(No. 26079.—

THE BUDA COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN KUT, Defendant in Error.)

*Opinion filed June 17, 1941.*

PEREGRINE & BRUEGGER, for plaintiff in error.

AUGUSTINE J. BOWE, and WILLIAM J. BOWE, (JOHN D. CASEY, of counsel,) for defendant in error.

Mr. JUSTICE MURPHY delivered the opinion of the court:

John Kut claimed compensation for disablement alleged to have been caused by an occupational disease arising out of his employment by plaintiff in error as an iron molder. The arbitrator and commission found Kut had suffered disablement by reason of silicosis contracted in his employment and allowed compensation for total, permanent disability. The superior court of Cook county sustained the award. On this writ of error the court is asked to

determine whether the finding of the commission is against the manifest weight of the evidence.

Kut, aged fifty-eight, was employed as a molder for thirty years, the last fifteen and one-half of which was by plaintiff in error. For reasons not related to Kut's physical condition plaintiff in error terminated his employment July 23, 1938. Later he sought reemployment but this was denied. He drew unemployment insurance from July 1, 1939, to September 9, following, and signed certain papers in reference to his then ability to work. The application in the instant case was filed with the commission in July, 1939.

His duties as a molder were those usually incident to such employment and, in general, involved the handling of sand in its preparation for and in the making of molds. It was handled by shovels and dampened to the right consistency to make the mold. After the molten metal was poured into the mold and permitted to cool, it was Kut's duty to break the molds, shake the sand out and repile and prepare the sand for another mold. There is evidence which shows sand dust in the room where he was employed in such quantities that exposure in his employment to the hazard of silicosis is clearly established.

Kut testified that during his employment he did not feel well but that since March, 1939, he had grown steadily worse, that he had sweats and chills, was weak, had lost weight, at times his *sputum* contained blood and that he was troubled with a shortness of breath which interfered with his sleep. He said he could not do manual labor.

Dr. Morris Weissman, a physician employed by the Municipal Tuberculosis Sanitarium of Chicago, and who had a record of several years experience in the diagnosis and treatment of lung ailments, testified that in September, 1939, he made a personal examination of Kut, read an X-ray film of his chest, and acquired information as to his occupational history and from these it was his opinion

that Kut had silicosis and was totally and permanently disabled.

Plaintiff in error introduced the testimony of four medical experts, namely: Drs. N. H. Davis, Paul Dick, Henry Sweany and Frederick Tice, and two roentgenologists, Drs. Hollace E. Potter and O. A. Sander. Each of them had made a study of lung ailments, specializing in silicosis. The evidence discloses they are men of wide experience and ability in their respective fields and are so recognized by the medical profession. The four who qualified as physicians and medical experts each made a personal examination of Kut.

Plaintiff in error introduced in evidence eight X-ray films, two taken by it while Kut was in its employ, one in 1933, one in 1936, two taken in September, 1939, and four in May, 1940. Kut introduced one film taken in September, 1939. The medical experts called by plaintiff in error testified that in their opinion Kut did not have silicosis and was not disabled by reason of an occupational disease.

The direct and cross-examination of the several medical experts dwelt principally upon the readings of the X-ray films and the bearing the symptoms had on their diagnosis. The evidence agrees that there are certain markings and shadows on the films, but the experts do not agree as to the interpretations of such markings or what their presence means. All agree that certain shadows or markings indicate nodules in certain lung areas, but they disagree as to the character of such nodules. Those called by plaintiff in error were of the opinion they were calcified and located in lung areas which would be indicative of a healed tuberculosis condition, while Dr. Weissman considered them of a silicotic nature.

The experts were not in accord as to what should be considered in diagnosing the case. Dr. Weissman, and some of the medical experts called by plaintiff in error, were of the opinion the occupational history and symptoms

should be considered in making the diagnosis, while others testified the X-ray films conclusively ruled out silicosis notwithstanding some of the symptoms might be considered characteristic of a silicotic condition. Practically all agree that some shortness of breath accompanies silicosis, but a part of them conclude that if the X-ray film does not disclose a silicotic condition the shortness of breath is not a controlling factor in a diagnosis. They assigned other causes for the shortness of breath.

A medical expert, without reference to proved symptoms or data gathered from a physical examination, may find facts on an X-ray film which he deems sufficient to enable him to diagnose a case and from which he feels qualified to express an opinion as to whether the claimant does or does not have silicosis. In determining the evidentiary value and weight to be given such opinion it is proper to consider it in connection with all the other evidence in the case and determine whether or not the expert witness' failure to include the known facts and physical data detracts from the value of his opinion as evidence. In *National Malleable and Steel Castings Co.* v. *Industrial Com. ante,* p. 169, it was said the commission, while engaged in the process of weighing the evidence to determine the ultimate question of whether or not there was disablement by an occupational disease, should consider the occupational history, the proved symptoms, the facts developed by physical examination made by medical experts, the readings of all the X-ray films, the opinions of the medical experts and all the other evidence which tends to prove or disprove a disablement arising out of an occupational disease.

Plaintiff in error stresses the numerical preponderance of expert witnesses expressing an opinion favorable to it and in its brief and argument says that "on the question of whether or not Kut had silicosis, the evidence of Dr. Weissman stands alone and uncorroborated against that of

Drs. Davis, Dick, Sweany, Tice, Potter and Sander." The fact that a number of expert witnesses express an opinion on one side of the question as against a lesser number on the opposite side is an element to be taken into consideration in determining the preponderance but it is not conclusive. An expert witness may strengthen his opinion by the statement of basic facts and underlying reasons so that his opinion is more convincing and entitled to greater weight than two or more experts whose opinions are not so fortified. If suits were to be decided in favor of the party who had the larger number of expert witnesses expressing favorable opinions to a particular side of the case, then cases of this character would soon develop into a contest as to who could furnish the greater number.

Furthermore, the statement of counsel referred to implies that the answer as to the existence or non-existence of silicosis lies exclusively in the opinions of the medical experts. The question presented in a case of this character is of a scientific nature and well-founded opinions of medical experts are important factors in determining the correct answer but they can not be taken to the exclusion of all other evidence.

The evidence of John Kut as to the nature of his employment, the conditions under which he worked and the ailments which he testified he had is not denied. The material conflict is confined to the testimony of medical experts. Such conflict in the evidence of medical experts is not unusual, for frequently experts appearing to possess the same general qualifications gained from experience and study make an examination of the same person, read the same X-ray films and come to conclusions diametrically opposed. Such conditions present a question of fact for the commission and in determining such fact it must attach such weight to the respective opinions as it concludes such opinion is entitled to in view of all the other facts and cir-

cumstances in evidence. For the court to adopt the view presented by plaintiff in error would, under the facts of this case, require the court to say which of the two groups of medical experts is more worthy of belief and whose evidence is entitled to the greater weight. That being the function of the commission, the court will not disturb its conclusion, for its finding on that question is not against the manifest weight of the evidence.

For the reasons assigned, the judgment of the superior court, sustaining the award, is affirmed.

*Judgment affirmed.*