(No. 26294.—

THE J. I. CASE COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ANGELO GIRARDI, Plaintiff in Error.)

*Opinion filed November 18, 1941.*

MILLER & THOMAS, (CHARLES A. THOMAS, of counsel,) for plaintiff in error.

WELSH & WELSH, (C. K. WELSH, of counsel,) for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

Angelo Girardi filed an application for the adjustment of compensation with the Industrial Commission, charging

that on or about November 18, 1938, he became permanently disabled from the occupational disease of silicosis, complicated with tuberculosis, and that at the time of his disablement he was engaged in work where silica sand and metal dust were constantly in the air. The arbitrator found that the employee had suffered a disablement causing complete disability, rendering him wholly and permanently incapable of work, and awarded compensation and a pension for life conformably to section 8 (f) of the Workmen's Occupational Diseases act. (Ill. Rev. Stat. 1941, chap. 48, par. 172.8, p. 1594.) On review, the Industrial Commission heard additional evidence and sustained the award of the arbitrator. The circuit court of Winnebago county found the evidence showed exposure to silica dust, sufficient to support the decision as to disablement, at the time Girardi applied for compensation and, later, upon the hearing. Nevertheless, the court set aside the decision and award of the commission, as being manifestly against the weight of the evidence, found, instead, that Girardi was temporarily totally disabled from November 18, 1939, to December 15, 1939, and rendered judgment awarding compensation for temporary total incapacity for work for the period described. We have granted a writ of error for a further review.

Girardi, forty-one years of age, was employed as a miller and sand blaster by the J. I. Case Company from 1923 to 1936 in its foundry in Rockford. Thereafter, commencing February 17, 1937, he was again employed by the company until November 18, 1938, when his services were terminated. During his second period of employment, he worked in the storage pits where molding sand was stored and in the foundry loading and unloading railroad cars of sand used for molding and core making. He also unloaded refuse from the furnaces and performed services incident to a janitor's duties. During the course of his employment he was frequently, if not regularly, exposed to silica dust.

The type of sand used in molding in the foundry, according to competent testimony, is rich in silica dioxide, or silica. Without narrating in detail the various duties performed by Girardi, we find the evidence adequate to sustain the successive findings of the arbitrator, the Industrial Commission and the circuit court that the employee was exposed to silica dust, and, hence, to the hazard of silicosis, both in the sand pits, or bins, and in the foundry.

A review of the relevant testimony is required to determine the propriety of the order of the circuit court vacating the decision of the commission as being manifestly against the weight of the evidence. November 8, 1938, plaintiff in error, Girardi, was examined by Dr. August Magnelia who advised him to enter the Rockford Municipal Sanitarium. He was admitted as a patient on November 22, and was still in the sanitarium on December 15, 1939, the day the Industrial Commission heard the cause on review. Dr. Theodore Lang and Dr. Magnelia testified on behalf of plaintiff in error at the hearing before the arbitrator. The employer, the defendant in error, introduced no medical testimony at this hearing. Dr. Lang, a radiologist, examined Girardi on February 13, 1939, took a history of the case and ordered stereo X-rays of his chest. Summarizing his findings, the doctor classified Girardi's case as one of the nodular type of silicosis, complicated by tuberculosis,—a case of silica-tuberculosis. Answering a question as to whether, in his opinion, the nodular condition in the employee's lungs was permanent, the witness replied that silicosis is the result of an irreversible process, namely, changes produced in the lung by silica dust which cannot be remedied, and added, "The changes cannot be removed, the condition cannot be restored to normal." Dr. Lang stated that from a theoretical point of view tuberculosis can be arrested but that the combination of silicosis and tuberculosis is very unfavorable, explaining it is difficult to arrest the tuberculous condition when silicosis is

present. On cross-examination, Dr. Lang testified the examination of the X-rays convinced him that the silicotic process preceded the tuberculosis process. Four stages in the progress of the disease were described, the first in which calcification proceeds, the second, the nodulation stage, the third, the one where complications such as tuberculosis arise, and the fourth or final stage. Dr. Lang expressed the opinion that the silicosis suffered by Girardi was in the second stage and, if the tuberculous complication be taken into consideration, the third stage was present, commenting: "It is a silicosis at stage two, complicated by tuberculosis; and if the complication of this sort is existing, several of the authorities call it stage three. In fact, some of them go as far as to say it is stage four." Dr. Magnelia saw and examined Girardi subsequent to his admission to the sanitarium. On May 5, 1939, he found that Girardi's general condition had improved considerably since the examination made in November, 1938. The witness read the X-ray pictures taken for Dr. Lang and from them diagnosed the case as silicosis, superimposed by tuberculosis. In Dr. Magnelia's opinion, Girardi was permanently disabled, due to the disease. On cross-examination, Dr. Magnelia testified that Girardi was incapacitated from any type of work requiring the least exertion; that his present condition would prevent him from performing the ordinary duties of a janitor; that he could not safely perform any office work, and that his activities should be very limited. Dr. Magnelia also stated that Girardi should remain in the sanitarium for some time.

Dr. W. J. Bryan, superintendent and medical director of the sanitarium, called as a witness by the employer, testified that Girardi had been a patient in the sanitarium since November, 1938; that the treatment prescribed was bed rest and observation; that the patient was disabled when he entered the sanitarium, remained in bed several months, and that he was still there under supervision and

treatment. The witness produced eleven X-ray pictures, taken on November 18 and December 15, 1938, and February 16, May 15, August 16, October 7, and December 6, 1939. A history and diagnosis chart of the patient prepared by attendants at the sanitarium was likewise admitted in evidence.

Two medical witnesses, Dr. O. A. Sanders and Dr. Norbert Enzer, practicing physicians of Milwaukee, Wisconsin, testified in behalf of the defendant in error. Dr. Sanders visited the sanitarium on October 8, 1939, for the purpose of examining Girardi. According to his testimony, he saw no shadows in any of the X-rays produced by Dr. Bryan suggesting silicosis, but, on the other hand, the shadow in the right upper lung on the first X-ray was in the characteristic location of tuberculosis, and had more or less the characteristic appearance of the disease, although a positive diagnosis could not be made from the X-ray alone. Comparing the last two X-rays with the first two taken, Dr. Sanders said there was a very marked clearing of the inflammation present in November, 1939. He concluded that the lesion had arrived at the stage of arrest. Upon the basis of the objective examination made of the patient and his examination of the X-ray negatives, Dr. Sanders expressed the opinion that Girardi did not have silicosis of "a recognizable degree, at least," and that the X-ray appearance was suggestive of tuberculosis which appeared to have become or was becoming arrested. By "recognizable silicosis," the witness explained there were no X-ray shadows which warranted a diagnosis of silicosis. A diagnosis of silicosis in the early degree, according to Dr. Sanders, must be done by *post-mortem*. In short, "You have to be dead first." Dr. Sanders testified further that, in his opinion, Girardi was still "somewhat disabled" when the objective examination was made; that the patient had been in the sanitarium for eleven months and "medically speaking, he had not arrived at a complete arrest or arrived

at the period where he should resume work;" that the cause of his disablement was due to the infection which he had in his right upper lung and that his then slight disability was due to the same infection. From an X-ray standpoint, the doctor said tuberculosis was suggested, but from laboratory studies which had been made there had never been any proof of tuberculosis, such as positive sputum. Concluding, Dr. Sanders stated that Girardi's disablement was not due to silicosis on either the day of the hearing before the Industrial Commission, namely, December 15, 1939, or on October 8, 1939, when he examined the patient. On cross-examination, a letter of Dr. Sanders addressed to the employer's attorney, dated October 16, 1939, was introduced in evidence. The letter contained an observation to the effect that Girardi would be discharged from the sanitarium in three or four months, at which time he would be able to work eight hours a day. In the portion captioned "Comment," Dr. Sanders stated: "The beading along the trunk shadows now has more the appearance of very early silicotic nodulation than in the 1936 films. Although it cannot be stated with certainty that it actually represents developing silicotic nodules, the possibility cannot be denied. Had this man not had the history of exposure to foundry dust in the past, this X-ray appearance would not excite interest as to the possibility of such past dust exposure. However, with the history of adequate exposure to dust, it is impossible to deny that this may be a borderline first stage silicosis. In my experience, however, there is no causal relationship between a silicosis of this degree and a tuberculosis which becomes arrested as rapidly as has this one." Testifying further, on cross-examination, Dr. Sanders declared he was not positive that Girardi did not have a pre X-ray silicosis, a condition which could be determined only on examination of the lung tissue under a microscope. Dr. Sanders also testified that Girardi should be able to return to work in another month or two; that

he would not recommend again placing the employee in the foundry; that a person with a tuberculosis lesion should not work in a foundry or any place where he could get recognizable silicosis, and, finally, if inability to return to work in the foundry or around silica dust constituted a disablement, Girardi was disabled.

Dr. Enzer examined the eleven X-rays previously mentioned on December 14, 1939, the day before he testified before the Industrial Commission. He did not make an objective examination of the patient. From the X-rays, he expressed the opinion "There is evidence of pathology, * * * those films demonstrate evidence of some type of inflammation. It is probably tuberculosis," and that silicosis was not present in any degree.

In determining whether an employee has silicosis causing disablement compensable under the Workmen's Occupational Diseases act, the Industrial Commission should consider the occupational history of the patient, his physical condition, the X-ray readings, the opinions of the medical experts and other competent evidence which tends to prove or disprove a disablement caused by silicosis. (*Buda Co. v. Industrial Com.* 377 Ill. 215; *National Malleable and Steel Castings Co.* v. *Industrial Com.* id. 169.) Expert medical testimony is legal and competent evidence and should be received, treated and weighed precisely as other evidence. The character of the expert, his professional capacity, skill and opportunity for observation are proper factors to be considered in determining the weight to be accorded his testimony. (*National Malleable and Steel Castings Co.* v. *Industrial Com. supra.*) Where expert witnesses disagree, the court cannot undertake to determine with technical accuracy where the preponderance of the evidence lies. (*Hansell-Elcock Co.* v. *Industrial Com.* 376 Ill. 151; *Macon County Coal Co.* v. *Industrial Com.* 374 id. 219.) We have consistently announced that it is the province of the Industrial Commission, qualified by

experience and special study, to draw reasonable conclusions and inferences from evidentiary facts, and that the courts are not privileged to set aside a decision of the Industrial Commission on a finding of fact, unless its decision is manifestly against the weight of the evidence. (*National Malleable and Steel Castings Co.* v. *Industrial Com. supra;* *Hansell-Elcock Co.* v. *Industrial Com. supra.*) Again, where the facts are controverted, and the determination of a disputed question of fact depends upon credit to be given contradictory testimony, the courts will give due weight to the finding of the commission. (*DeCarrion* v. *Industrial Com.* 370 Ill. 474.) The testimony recounted, together with Girardi's occupation and his hospitalization from November 22, 1938, to and including December 15, 1939, the day of the hearing before the Industrial Commission, tend to corroborate the opinions of Dr. Lang and Dr. Magnelia. Opposing medical opinions introduced in behalf of the defendant in error are not necessarily decisive. The finding of the court that Girardi was exposed to silica dust and contracted silicosis of a non-permanent character is inconsistent with its conclusion that the decision of the Industrial Commission was against the manifest weight of the evidence. If Girardi had silicosis in any degree, its permanency was a question of fact determinable by the commission. We hold the evidence sufficient to sustain the decision of the commission that Girardi was not only exposed to but contracted an occupational disease arising out of and in the course of his employment. Where the evidence is merely conflicting, as here, and the commission's finding is not contrary to the manifest weight of the evidence, its decision should not be disturbed. *Liberty Foundries Co.* v. *Industrial Com.* 373 Ill. 146; *Czerny* v. *Industrial Com.* 369 id. 275; *Board of Education* v. *Industrial Com.* 362 id. 263.

Our attention has been directed to testimony disclosing an improvement in Girardi's condition during the period

of nearly fourteen months of his confinement in the sanitarium. The inescapable fact remains that he was still a patient at the sanitarium on December 15, 1939, when the commission heard the additional testimony proferred by the defendant in error. It was then a matter of sheer speculation as to whether Girardi would be able to leave the hospital and perform work of any kind, much less the character of employment previously pursued. If, at some future day, he should recover his health sufficiently to permit the pursuit of a gainful occupation a remedy is available to the employer. Paragraph (f) of section 8 of the Workmen's Occupational Diseases act provides that where an employee who receives an award for complete disability and subsequently returns to, or is able to resume, work, and who earns, or is able to earn, as much as before the last day of the last exposure, payments under the award shall cease. If, on the other hand, the employee returns to, or is able to return to, work, and earns, or is able to earn, merely a part of the compensation earned prior to the last day of his last exposure, the award shall be modified so as to conform to the award under paragraph (d) which prescribes the compensation for partial disability. These statutory provisions clearly disclose that the General Assembly did not employ the words "complete disability" in paragraph (f) of section 8 as synonymous with a perpetual and irremediable incapacity for work. Manifestly, neither the Industrial Commission nor the courts are warranted in speculating as to Girardi's disability subsequent to December 15, 1939, particularly, when he was, admittedly, still a patient in the Rockford sanitarium.

The judgment of the circuit court of Winnebago county is reversed and the award of the Industrial Commission is confirmed.

*Judgment reversed; award confirmed.*