(No. 29169.—

P. HARVEY TURNER, Plaintiff in Error; *vs.* THE INDUS-TRIAL COMMISSION *et al.*—(FRANK FOUNDRIES COR-PORATION, Defendant in Error.)

*Opinion filed March 20, 1946—Rehearing denied May 21, 1946.*

GUNN and MURPHY, JJ., specially concurring.

EAGLE & EAGLE, of Rock Island, for plaintiff in error.

OAKLEAF & CHURCHILL, of Moline, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

July 18, 1941, F. Harvey Turner, a foreman employed by Frank Foundries Corporation, filed an application for adjustment of claim under the Workmen's Occupational Diseases Act alleging that on January 5, 1940, he was last exposed to an occupational disease hazard arising out of and in the course of his employment and that, on the day last named, he became disabled from silicosis and bronchitis. November 19, 1941, an arbitrator found that the Industrial Commission was without jurisdiction because the application had not been filed within one year from the date of disablement charged, conformably to section 24 of the Occupational Diseases Act, (Ill. Rev. Stat. 1945, chap. 48, par. 172.24,) and on December 31, 1941, Turner's application was dismissed. No appeal was taken from this finding. March 2, 1942, Turner filed a second application, substantially identical with the original, except that the approximate date of disablement was stated to be June 20, 1941. A motion to dismiss the new application was interposed and, on September 8, 1942, the arbitrator found that jurisdiction was wanting for the reason, "said

matter is *res judicata,* upon the application heretofore filed on the eighteenth day of July, 1941, and decision entered pursuant thereto on the nineteenth day of November, 1941." On review, the Industrial Commission took under advisement the employer's motion to dismiss and, after numerous hearings, on February 18, 1944, decided that the parties were operating under the Workmen's Occupational Diseases Act; that, on January 5, 1940, Turner was last exposed to the hazards of an occupational disease, as defined by statute; that due notice of the alleged disablement and claim for compensation had been given the employer; that Turner failed to prove he contracted an occupational disease as a result of his last exposure, as defined in section 6 of the act as amended, and, further, that he failed to prove by a preponderance of the evidence a disablement sustained on or about June 20, 1941, as a result of an occupational disease arising out of and in the course of his employment. The circuit court of Rock Island county confirmed the order of the commission. We have granted a writ of error for a further review.

Turner testified that he had been employed as foreman by Frank Foundries Corporation for eighteen years; that all kinds of molding sand were used in its foundry, and that the running of cases through rattler molds to remove sand always caused dust. He ceased working on January 5, 1940, on the advice of a physician who had told him he required rest. Turner had a bad cough and, for the ensuing two and one-half months, was confined in a tuberculosis sanitarium. At the sanitarium, and subsequently, he was examined by Doctors Koivun, Beam and Meyers. The examination included X-rays and sputum tests, several of the latter being positive, indicating the presence of tubercular bacilli. According to Turner, none of these physicians attributed his ill-health to silicosis. His cough grew worse, pains developed in his neck, shoulders, chest and stomach. In June, 1941, he went to Iowa City, Iowa, where he was

examined by Dr. James A. Green and Dr. Lierle, both of whom advised him that he would be unable to continue his employment in a foundry because he was suffering from silicosis. He added that he had lost fifteen or eighteen pounds which he had never regained; that he had become noticeably short of breath; that his condition appeared to be deteriorating, and that he was weaker physically than when he stopped working.

The medical testimony is conflicting. Four physicians testified, two each for the employee and the employer. We observe that in the medical testimony introduced on behalf of both the employee and the employer, the experts appear to agree that silicosis usually progresses by stages: the first stage of the disease, which is not disabling, is difficult to discern; the second stage becomes discernible under X-ray, owing to the presence of discrete, or sharp, nodules on the lungs. Silicosis becomes disabling to some persons in the second stage, and to all persons in the third stage. The third stage is evidenced by a coalescence of these nodules and, when developed to a high degree, finally renders the lungs unfit for breathing purposes and causes death. From the deposition of Dr. Green, taken on behalf of Turner, it appears that two X-ray films, one of the stomach and one of the chest, introduced in evidence, were taken under his supervision; that the chest X-ray, taken after injection of lipiodol, revealed bronchiectasis with pneumoconiosis, which means "dusty lungs" or silicosis. Basing his opinion on these X-rays and, also, on his examination of Turner, Dr. Green testified that it would be possible for eighteen years' exposure to silica dust in a foundry to cause the conditions he described and that, in his opinion, silica dust was undoubtedly an important factor in the production of Turner's affliction. Dr. Ralph S. Turned did not make an objective examination of the employee. Answering a hypothetical question, Dr. Turner expressed the opinion that Turner (the employee) had

tuberculosis or bronchitis prior to June 20, 1941, but that thereafter he had been disabled by bronchitis and silicosis. Dr. Turner further testified that he found no evidence of nodulation whatever, much less any evidence of coalescence. Silicosis must have been present on June 5, 1940, the date of disablement alleged in the first application, the witness continued,—at the same time observing that it was not necessarily disabling on the earlier date. Although he had previously examined Turner, the testimony of Dr. Karl W. Wahlberg, one of the employer's witnesses, was confined to reading X-ray films offered by the parties. He testified, after examining the X-rays taken by Dr. Green in Iowa City, that neither was diagnostic of silicosis. The X-ray picture of the chest, he insisted, was rendered ineffectual owing to previous injection of lipiodol. Dr. Wahlberg testified that silicosis can be determined solely from an X-ray, and that after examining three X-ray pictures taken in 1936, September and July, 1941, respectively, he found no evidence of disabling silicosis in any of them. Dr. O. R. Voss, a radiologist of considerable experience, substantially corroborated the testimony of Dr. Wahlberg.

Turner's claim, persistently and repeatedly urged throughout his brief, that a stipulation between the employer and himself admits he had contracted an occupational disease arising out of and in the course of his employment, requires initial consideration. The record discloses that the arbitrator, upon the first hearing, in an attempt to clarify the issues, stated that it was stipulated and agreed beween· the parties "that on the fifth day of January, 1940, said petitioner and said respondent corporation were operating under and subject to the provisions of the Workmen's Occupational Diseases Act; that the relationship of employee and employer existed between said petitioner and said respondent;" that, on June 5, 1940, "petitioner sustained an alleged injury" and that "Notice of disablement arising out of and in the course of the em-

ployment—" At this point, M. Berg, then attorney for the employer, stated, "No, that is not agreed to. We do not admit 'arising out of and in the course of the employment.' We do not admit notice.

"The Arbitrator: Notice of said alleged disablement?

"Mr. Berg: Not admitted.

"The Arbitrator: Do you admit claim for compensation on account of the alleged disablement under the Workmen's Occupational Diseases Act?

"Mr. Berg: Not admitted.

"The Arbitrator: Not admitted by the respondent."

From the foregoing, it is obvious that the company made no admission with respect to the existence of an occupational disease contracted by its employee arising out of and in the course of his employment. Turner's contention in this regard is, accordingly, without merit. Likewise, there is no legitimate basis for his further contention that the employer, upon the final hearing before one of the commissioners, shifted its entire theory of defense and, in direct contradiction of the alleged stipulation, sought to establish that at no time did he have silicosis. Never having admitted the existence of an occupational disease arising out of and in the course of the employment, the employer consistently maintained throughout the proceedings before the arbitrator and, later, before the commission, on review, that Turner's claim for compensation was barred, first, because the original application was not filed within one year from the stated date of disablement and, second, for the additional reason that its dismissal for want of jurisdiction was *res judicata* of the second application. Turner's application has been heard and decided on the merits and it is, hence, immaterial whether his application of March 2, 1942, be treated as a new or an amended application.

Insisting that Dr. Wahlberg should not have been permitted to testify, Turner has recourse to section 12 of the

Occupational Diseases Act prescribing that, where an examination is made by a physician or surgeon on behalf of an employer the duty devolves upon the former to deliver to the employee a statement in writing of the examination and findings to the same extent as he reports to the employer. Where the physician refuses to furnish the employee with such statement, section 12 provides, "said physician or surgeon shall not be permitted to testify at the hearing next following said examination." (Ill. · Rev. Stat. 1945, chap. 48, par. 172.12.) Dr. Wahlberg examined Turner on July 3, 1941. Turner objected to his testimony at the hearing on October 3, 1943, which was not, however, "the hearing next following said examination." Moreover, no attempt was made to examine Dr. Wahlberg with respect to any matters relating to his physical examination of Turner, his testimony being confined entirely to reading and interpreting X-ray pictures.

It is next urged that the decision of the Industrial Commission and the judgment of the circuit court are not supported by any competent evidence. The employee contends that the commissioner, over proper objection, allowed the employer to introduce its evidence at the final hearing, without requiring it to comply with rule 11 of the commission, prescribing five days' notice to the opposing party of the substance of the evidence intended to be presented. The argument supporting this contention is that the introduction of this testimony enabled the company to take the employee completely by surprise and that, with this testimony excluded, an adequate defense is lacking. A sufficient answer is that Turner's counsel, upon being informed by the commissioner that his objection, if persisted in, would be sustained and a continuance granted to the employer so the objection could be obviated, thereupon withdrew his objection to the introduction of the testimony of which he now complains. Under these circumstances, the error, if any, was waived.

The rule is firmly established that it is the province of the Industrial Commission to draw reasonable conclusions and inferences from evidentiary facts in workmen's compensation proceedings, and the courts are not privileged to set aside factual findings of the commission unless they are manifestly against the weight of the evidence. In short, a decision of the Industrial Commission should be set aside only where it is without substantial foundation in, or is manifestly against the weight of, the evidence. (*Lawrence* v. *Industrial Com.* 391 Ill. 80; *J. I. Case Co.* v. *Industrial Com.* 378 Ill. 132; *Hansell-Elcock Co.* v. *Industrial Com.* 376 Ill. 151; *Olympic Commissary Co.* v. *Industrial Com.* 371 Ill. 164.) Again, where, as here, the decisive evidence consists of the highly conflicting views of medical experts, this court will not undertake to decide which of the two groups is more worthy of belief and whose evidence is entitled to the greater weight. The determination of where the preponderance of the evidence lies is pre-eminently a function of the Industrial Commission. (*Buda Co.* v. *Industrial Com.* 377 Ill. 215; *Hansell-Elcock Co.* v. *Industrial Com.* 376 Ill. 151.) Since the evidence is merely conflicting, and the commission's finding is not contrary to the manifest weight of the evidence, its decision will not be disturbed.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

GUNN and MURPHY, JJ., specially concurring:

We think the result in this case is correct. We feel, however, we should take notice of the unreasonable length of time taken to reach a decision in the case. The proceeding was started in June, 1941, and a final decision reached by the commission in March, 1944. During this period eleven continuances were granted, and it is claimed the arbitrator announced he had the discretion to grant such at will and for such periods as he deemed fit. It

536

appears also the rules regarding the testimony of doctors who made a personal examination of petitioner were disregarded. We think it important to emphasize that one of the supposed benefits of the Workmen's Compensation Act and the Occupational Diseases Act was to avoid the delay frequently occurring during litigation. Arbitrators go from place to place and are appointed in sufficient numbers to enable each of these cases to be promptly decided. The law provides they shall be promptly heard and decided both by the commission and the courts. Eleven continuances covering a period of over two years seems inexcusable. Justice delayed is justice denied. While the correct result was reached in this case, like delays in meritorious cases would result in great injury and injustice. For this reason we feel impelled to disapprove a practice which would tend to deny the constitutional mandate that every person ought to obtain justice promptly and without delay.