(No. 31097.—

JEFFERSON ICE COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ELIZABETH GRAF, Plaintiff in Error.)

*Opinion filed November 22, 1949.*

EUGENE R. WARD, of Chicago, for plaintiff in error.

CLARENCE S. PIGGOTT, of Chicago, for defendant in error.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Elizabeth Graf filed an application for adjustment of claim with the Industrial Commission alleging that, on June 16, 1946, her husband, Carl Graf, sustained fatal accidental injuries arising out of and in the course of his employment by the Jefferson Ice Company. An arbitrator found the issues for claimant and entered an award accordingly. Upon review before the Industrial Commission, additional evidence was introduced by the employer and the award of the arbitrator was affirmed. On *certiorari,* the superior court of Cook County held that the commission's finding that Graf's injuries arose out of and in the course of his employment was contrary to the manifest weight of the evidence, found that the injuries did not arise out of the employment, and reversed and set aside the decision and award of the commission. We have granted claimant's petition for a writ of error for a further review of the record.

The record discloses that Carl Graf had been employed by the Jefferson Ice Company for many years and that,

during 1946, he worked only occasionally. On June 15, 1946, his third day of employment by the ice company in 1946, Graf was assigned to the company's plant No. 5, located at 1461 Clybourn Avenue, Chicago, his hours of employment being from 11:00 P.M. to 7:00 A.M. of the following day. Graf was employed as a stationary engineer and was in charge of the manufacture of ice. The only other employees on duty were an ice puller, who worked under Graf's supervision, and a storehouse attendant. No watchman was on duty on the night in question.

In the performance of his duties as engineer, Graf had to check the ammonia compressors in the engine room and the tank compressors and expansion valves in the tank room. These two rooms are located in separate, but adjoining, buildings and, at the time of the accident, it was necessary to cross a privately-owned stub alley in order to go from one building to the other. The alley opens on Clybourn Avenue. At its far end, about twenty feet beyond the door to the engine room, there is an entrance to the storehouse building where the tank room is located. Between the doors to the respective buildings there is a coin-operated ice-vending machine attached to and built into the wall. The ice-vending machine consists of a coin box and an ice chute, the ice chute being located near the storeroom door and the coin box being six or seven feet away in the direction of the door to the engine room. Considerable ice is sold by this method at night and the money in the coin box is not collected by anyone on the night shift.

The duties of the night engineer require him to record the gauges in the engine room at 1:00 A.M. and, again, at 4:00 A.M., and it sometimes becomes necessary for him to make as many as fifteen or twenty trips between the two buildings in a single night. The storehouse attendant, who had never met Graf prior to the night in question and who was still in the employ of the ice company at the time of the hearing before the arbitrator, was the only one of

Graf's two fellow employees to testify, it further appearing that the ice puller had left the company about five months after the accident. According to this witness, he saw Graf departing from the storeroom through the door leading into the alley at approximately 4:00 A.M. and followed him out into the alley three or four minutes later. Immediately upon entering the alley, he saw a pool of blood in front of the ice chute and, by following marks where something had been dragged across the alley, he discovered Graf's body about fifteen feet away, located between two transformer poles next to the wall on the opposite side of the alley from the entrance to the engine room. Graf's head was lying in a pool of blood and he had a very slight pulse. After calling the ice puller, the storehouse attendant ran out on Clybourn Avenue, instructed a passing motorist to call the police or an ambulance, and then returned and watched Graf until the police arrived. Graf died the same day as the result of the injuries sustained.

To be compensable under the Workmen's Compensation Act, an accidental injury must both arise out of, and in the course of, the employment. (Ill. Rev. Stat. 1947, chap. 48, par. 138; *Armour & Co.* v. *Industrial Com.* 397 Ill. 433; *Math Igler's Casino, Inc.* v. *Industrial Com.* 394 Ill. 330.) Admittedly, the injuries resulting in Graf's death were received in the course of his employment and, thus, the sole issue presented is whether the injuries sustained arose out of the employment. The Industrial Commission decided that Graf's fatal injuries arose out of his employment. The judgment of the superior court reversed the decision of the commission upon the ground that it was against the manifest weight of the evidence. The question presented for decision is thus narrowed to a determination of whether the decision of the Industrial Commission is against the manifest weight of the evidence. The determination of the question of whether Graf's injuries arose out of his employment involved the weighing

of evidence, a consideration of the probabilities, and the giving of credit to testimony. The established rule is that it is the province of the commission, qualified by experience and special study, to draw reasonable conclusions and inferences from evidentiary facts in workmen's compensation proceedings, and the courts are not privileged to substitute their judgment for factual findings of the commission unless they are clearly and manifestly contrary to the weight of the evidence. (*Cruthis* v. *Industrial Com.* 394 Ill. 506; *Moergen* v. *Industrial Com.* 394 Ill. 383; *Turner* v. *Industrial Com.* 393 Ill. 528.) Stated somewhat differently, a decision of the Industrial Commission should be set aside only where it is without substantial foundation in, or is manifestly against the weight of, the evidence. *Turner* v. *Industrial Com.* 393 Ill. 528; *Crane Co.* v. *Industrial Com.* 378 Ill. 190; *Case Co.* v. *Industrial Com.* 378 Ill. 132.

An accidental injury arises out of the employment when it has its origin in some risk of the employment. As observed in an early case, an injury may be said to have arisen out of the employment, when, from the attendant circumstances there is apparent to the rational mind a causal connection between the conditions under which the work was performed and the injury. (*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) More recently, we have held that an injury, to be compensable, must be of such character that it may be seen to have its origin in the nature of the employment or have been incidental to the employment, or it must have been the result of a risk to which, by reason of the employment, the employee was exposed to a greater degree than if he had not been so employed. (*Olson Drilling Co.* v. *Industrial Com.* 386 Ill. 402.) Conversely, it is not enough that the injury occurred during the course of the employment if the injury resulted from some cause having no relation to the character or

conditions of the employment. (*Klug* v. *Industrial Com.* 381 Ill. 608; *Mazursky* v. *Industrial Com.* 364 Ill. 445.) It is not necessary, however, that the injury have been specifically anticipated by the employee, nor, in general, need it be one peculiar to the particular employment in which the employee is engaged at the time. (*Krawiec* v. *Industrial Com.* 372 Ill. 560; *Central Illinois Public Service Co.* v. *Industrial Com.* 291 Ill. 256.) Furthermore, the fact that an injury resulting in death arose out of the employment need not be proved by direct evidence, but may be established by circumstantial evidence leading to a fair, logical and reasonable inference that the injury originated in a risk of the employment or was incidental to the nature and conditions of the employment. *Grola* v. *Industrial Com.* 388 Ill. 114; *Northwestern Yeast Co.* v. *Industrial Com.* 378 Ill. 195; *Armour & Co.* v. *Industrial Com.* 367 Ill. 471; *Ervin* v. *Industrial Com.* 364 Ill. 56.

The employer contends the finding of the Industrial Commission that the injuries arose out of the employment is based upon imagination, speculation and conjecture. While it is true that there is no direct evidence as to the cause of Graf's fatal injuries, there can be logically drawn from the uncontroverted circumstantial evidence and the reasonable inferences arising therefrom the legitimate conclusion that Graf's injuries arose out of his employment by the ice company. There is no suggestion in the record that Graf fell in the alley, or was stricken by some pathological ailment, or committed suicide. Indeed, the short period in which the injury occurred, the marks in the alley showing where the body had been dragged and the hidden place where the body was found lead inescapably to the inference that Graf was killed by an assailant. The possibilities that Graf was killed by a personal enemy, a fellow employee, a customer at the ice-vending machine or by a homicidal maniac are rendered extremely remote by

competent circumstantial evidence showing that he was killed the first night he worked at plant No. 5; that he was on duty with only two other men, and that he was injured within the space of three or four minutes, a period too short to permit a violent argument with a customer in the alley. Moreover, the conclusion that Graf was killed by an intruder or burglar is as reasonable and logical as all other potential inferences are improbable and remote. The hour of the infliction of the injury, the absence of a night watchman, the fact that Graf was hurt near the ice-vending machine and in the vicinity of the two entrances to the ice plant, the quick assault, and the attempt to hide the body,—all support the inference that Graf was injured by an intruder intent upon stealing the money in the coin box of the ice-vending machine or otherwise committing burglary against the ice company.

In view of the competent evidence and the most reasonable inference arising therefrom as to the cause of Graf's injury, it cannot be said that the challenged finding of the Industrial Commission is based upon speculation and conjecture. Under the facts, as related, the Industrial Commission was entitled to find that Graf's injuries were incidental to his employment and arose out of a risk to which he was subjected by his employment to a greater degree than the public generally in that vicinity. There being competent evidence upon which the Industrial Commission's finding as to the origin of Graf's injuries can be based, the finding and decision should not have been disturbed. *Town of Cicero* v. *Industrial Com.* (*post*, p. 487); *Perkins Products Co.* v. *Industrial Com.* 379 Ill. 115.

The judgment of the superior court is reversed and the cause remanded to that court, with directions to confirm the decision and reinstate the award of the Industrial Commission.

*Reversed and remanded, with directions.*