Sam Gorgone, Frances Gorgone, Dortha Pierson and Harmon Pierson, Plaintiffs-Appellees, v. Hicks Oils and Hicks Gas, Inc., Defendant-Appellant.

Gen. No. 10,539.

Opinion filed January 8, 1952. Released for publication January 28, 1952.

GANN, SECORD, STEAD & McINTOSH, of Chicago, and BERNARD M. DECKER, of Waukegan, for appellant; KENNETH B. KIRK, of Chicago, of counsel.

LIDSCHIN & PUCIN, and CLAUDE R. CALLOWAY, all of Waukegan, for appellees; GLENN SEIDENFELD, of Waukegan, of counsel.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Suit was brought in the circuit court of Lake county by Sam Gorgone, Frances Gorgone, Dortha Pierson, and Harmon Pierson against Hicks Oils and Hicks Gas Inc., for damages to a residence property owned by the Gorgones and damages to the contents which were owned by the tenants, the Piersons. The damages resulted from a fire which appellees claim was caused by improper installation and conversion of a propane gas stove. The cause was tried by a jury and verdicts were returned against appellant and in favor of appellees Gorgone for $4,750; for appellee Dortha Pierson for $400 and for appellee Harmon Pierson for $450. Motions by appellant for a directed verdict at the close of plaintiffs' evidence and at the close of all the evidence were denied. Motions for judgment notwithstanding the verdict and for a new trial were denied. Judgment was entered on the verdicts. From these judgments comes this appeal.

The complaint alleged that appellant, Hicks Oils and Hicks Gas Co., Inc., was engaged in the business of selling bottled gas and converting and installing stoves for the use of bottled gas which gas is a dangerous and highly inflammable substance; that the Gorgones delivered a gasoline stove to the appellant to be converted to a gas stove and to be installed in a building owned by them and rented to the Piersons; that appellants did the work of converting said stove in a careless and unworkman-like manner; and that as a result of appellant's negligence in so converting the stove and installing it, gas escaped, became ignited, and burned down the house owned by the Gorgones, and destroyed the personal effects of the Piersons. The answer of appellant admitted that it converted the stove and installed it, but denied all allegations of negligence.

It appears from the evidence in the record that appellees Gorgone delivered a gasoline stove to appellants to be converted to a bottled gas stove. Appellant

made the conversion in its place of business,.tested it, and several days later installed it on the premises owned by appellees Gorgone. After installation, appellants checked the stove for operation and leaks and found that it operated satisfactorily and that there were no leaks. A next-door neighbor was instructed as to operation and asked to relay the instructions to appellees Pierson, which she did. The following morning Mr. Pierson turned on the gas at the bottles outside the house, turned on the safety valve at the side of the stove, and turned on one of the burners and made coffee. When he finished, he turned off the burner and the safety valve at the side of the stove, but the cut-out valve at the bottles was not turned off. About two hours later Mrs. Pierson was firing the coal stove which was located about two and one-half to three feet from the gas stove. She turned and noticed flames about half-way up to the ceiling. The flames were coming from the rear burners of the gas stove and were coming toward the front burners. After taking the children from the house, Mrs. Pierson returned to the kitchen and at that time the flames were still coming from the rear burners, but the fire had increased in intensity and had reached the ceiling and the flames were spreading down the side of the walls. Neither Mr. nor Mrs. Pierson smelled the odor of gas at any time. Mrs. Pierson testified that she had a severe head cold. At the time or immediately before she first saw the fire, she noticed no eruption or noise. She testified that the children were making quite a bit of noise.

██ Appellant contends that the plaintiffs have wholly failed to prove the essential elements of their case. It urges that before plaintiffs can recover, they must prove (1) that the defendant was negligent in converting and installing the gasoline stove; (2) that the gas escaped from the stove as a result of such negligence; and (3) that the escaping gas became ig-

nited and caused the conflagration. Appellees admit they were required to make such proof, but contend that they made it. Appellant further urges that the appellees failed to make the necessary proof to make out a prima facie case. It appears from the abstract of the record that the appellant made its motion for a new trial in the alternative in conformity with the Practice Act (Ill. Rev. Stat. 1951, chap. 110, par. 192 [Jones Ill. Stats. Ann. 104.068]). Appellant in its brief and argument does not contend that the trial court should have awarded it a new trial. Appellant contended in the trial court and contends here that the trial court committed reversible error in not granting them their motion for a directed verdict and in not granting them their motion for judgment notwithstanding the verdict. The law applicable to whether or not both of these motions should be granted or denied is essentially the same. (*Hughes v. Bandy,* 404 Ill. 74; *Hunt v. Vermilion Co. Child. Home,* 381 Ill. 29.)

The court, in passing on these motions, must assume that all the evidence in favor of the plaintiff, and all inferences that may be legitimately drawn therefrom, are true. Also if the court finds that such evidence, considering it in its most favorable light on behalf of the plaintiff, has made a prima facie case, then the motion for a directed verdict in favor of the defendant or for a judgment notwithstanding the verdict in favor of the defendant, should both be denied. (*Lindroth v. Walgreen Co.,* 407 Ill. 121; *Hughes v. Bandy, supra; Hunt v. Vermilion Co. Child. Home, supra; Moran v. Gatz,* 390 Ill. 478; *Blumb v. Getz,* 366 Ill. 273; *Ritter v. Nieman,* 329 Ill. App. 163.)

Appellees urge that the evidence contained in this record discloses that it is sufficient to support their verdicts under the above rules of law. It is necessary to further review the evidence to answer these questions. The first material element to appellees' case is

whether or not appellant was negligent in converting the stove and installing it. There is no question but that appellant was required to use a reasonable degree of care commensurate with the dangerous tendencies of the gas to be used in the stove. (Thornton, Law of Oil and Gas (4th Ed. 1925), vol. 1, p. 1392; *Seward v. Natural Gas Company of New Jersey*, 1 N. J. S. 144, 78 Atl. (2d) 129.) Appellees' witness Hocksema testified that he had been in the business of converting gasoline stoves to the use of bottled gas for twelve years. The day following the fire, he went to the ruins of the building and removed a part from inside the stove. The stove was smashed and broken. The part was identified as a part of the manifold of the stove in question and was received in evidence without objection by appellant. On direct examination this witness was asked this question: Q. "In converting properly what are the steps to be taken to convert this gasoline type burner to a tank gas type burner?" After reciting several steps and still in response to the foregoing question, the witness was then asked the following questions: Q. "If I understand you correctly you cut a piece of the section that has already been screwed into the lower vent and you weld that closed?" A. "Yes, that's right." Q. "When you found this plaintiff's Exhibit 1 for identification did you find any closer at all in the lower vent?" A. "No, sir." Q. "Have you examined it to see whether or not it had ever been welded shut?" A. "Yes." Q. "Is there any evidence whatsoever that it ever had been welded closed?" A. "No, sir."

On cross-examination this same expert witness testified that if the hole were not closed and the stove was in operation, that the gas would come out and go down to the bottom of the stove where there is an opening underneath the manifold which is not air tight but tight enough to hold propane gas, and that when the

333

gas gets up to the top of the burner, if the burner is lit, the gas will ignite and burn but not explode. On redirect, this witness testified that this vent was never closed.

■ It is clear from the foregoing that this witness testified that the stove in question was not properly converted. This testimony standing alone and taken with all its intendments most favorable to appellees established negligence on the part of appellant.

This witness further testified that propane gas would escape from the hole in the part in the manifold and would collect in an opening underneath the manifold which is not air tight but tight enough to hold propane gas. This testimony standing alone and taken with all its intendments most favorable to appellees established the second element to wit: gas escaped as a result of the negligence of appellant.

We consider the further testimony of appellees' expert witness. He testified that gas would burn and not explode under the then existing circumstances and that it would be ignited by an open flame.

Mrs. Pierson testified that the coal stove door was open either at the actual time or but an instant before she first noticed the flames arising from the rear burners of the gas stove. The coal stove was only two and one-half to three feet from the gas stove. She testified that the flames were coming from the rear burners of the gas stove. We believe that this evidence standing alone establishes that the gas became ignited and caused the conflagration.

■ Appellant contends that the part of the manifold was not shown to be in the same condition at the time it was found the following day as it was when the fire started. No objection was made by appellant when it was offered in evidence and this question was thereby waived.

Appellant introduced evidence that Mrs. Pierson would have smelled the gas if any had escaped. Appellees introduced evidence that she might not have smelled it, and Mrs. Pierson herself testified that she had a severe head cold and did not smell it. The jury apparently believed that the gas escaped and she did not smell it.

There was directly conflicting testimony that the gas would explode rather than burn, and much other conflicting testimony on various matters. The jury obviously believed the appellees' witnesses rather than those who testified for appellant.

The case of *Lindroth v. Walgreen Co., supra,* is a similar case recently decided by the Supreme Court of this State. A small child was seriously burned and the jury returned a large verdict for his personal injuries. It was contended that the fire was caused by a defective vaporizer. Defendant contended that the fire was caused by a defective electric cord or for other reasons upon which there was little evidence introduced. There were no eyewitnesses. The Supreme Court said in that case on page 134 of the opinion: ''The fact there is evidence that might have been a reasonable basis for inference that the fire was caused by a defective cord, and that the melting was a result of the fire and not its cause, is all beside the point. The inquiry here is whether the result reached below was one which is reasonable on the facts in evidence, not whether other conclusions might also have been reached.''

 The court further said on page 135 of the opinion: ''The argument of appellants that the melting was due to the heat of the fire and not that of the heating element in the vaporizer is likewise based on an inference, for there is no direct evidence to support it. A verdict may not be set aside merely because the jury could have drawn different inferences or because

judges feel that other conclusions than the one drawn would be more reasonable. (*Jefferson Ice Co. vs. Industrial Com.* 404 Ill. 290; *Heiting vs. Chicago, Rock Island and Pacific Railway Co.* 252 Ill. 466; *Tennant vs. Peoria and Pekin Union Railway Co.* 321 U. S. 29, 64 S. Ct. 409.) There is no complete absence of probative facts to support the inference drawn here and therefore the trial court properly overruled appellants' motions for directed verdict and for judgment notwithstanding the verdict.''

It appears to us that the facts in the *Lindroth* case, *supra,* make a much stronger case in favor of directing the verdict than the facts here. In that case there were no eyewitnesses to the fire, and the verdict was largely based on the inferences arising from the circumstances appearing from the evidence.

Keeping the foregoing legal principles in mind, the cases of *Pennsylvania R. R. Co. v. Chamberlain,* 288 U. S. 333; *Wesson v. United States,* 172 F. (2d) 931; *Gary Theater Co. v. Columbia Pictures Corp.,* 120 F. (2d) 891; and *Mass. Protective Assoc. v. Mouber,* 110 F. (2d) 203, cited by appellant, are not applicable here for, we believe, there is direct evidence in this record fairly tending to prove the necessary elements of appellees' case. Certainly there is no complete absence of probative facts to support the inference drawn here by appellees. On the basis of the law and the opinion of the Supreme Court as announced in the *Lindroth* case, *supra,* the question here was properly one to be resolved by the jury.

Appellant, as above noted, apparently has not urged in its briefs or assigned error on the grounds that the verdicts are manifestly against the weight of the evidence, that it is entitled to a new trial.

■ ■ It is our opinion, regardless of whether it has been urged or not, that the verdicts are not manifestly against the weight of the evidence. Who caused

336

the fire, whether or not there was negligence by the defendant, and whether such negligence was the proximate cause of the conflagration, were all questions of fact for the jury; and we cannot say that their findings, although the evidence was conflicting, is so unreasonable and speculative that they should not be permitted to stand, nor are they manifestly against the weight of the evidence. (*Denny v. Goldblatt Bros., Inc.,* 298 Ill. App. 325; *Baldridge v. Wright Gas Company,* 154 Ohio State 152, 96 N. E. (2d) 300; *Young v. Lee,* 310 Mich. 42, 16 N. W. (2d) 659; *Seward v. Natural Gas Company of New Jersey, supra.*)

■ There is evidence in this record which proves the essential elements of the plaintiffs' case. The jury evidently believed the testimony of the plaintiffs' witnesses, and the plaintiffs' theory of the cause of the conflagration. The proof being as it was, the trial court properly denied the motions for a directed verdict for judgment notwithstanding the verdict, and for a new trial.

The judgments of the trial court should be affirmed.

*Judgments affirmed.*