(No. 29487.—

WILLIAM CRUTHIS, Defendant in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(SUPERIOR COAL COMPANY,
Plaintiff in Error.)

*Opinion filed September 18, 1946.*

E. N. NEVINS, of Carlinville, and MILES GRAY, of
Springfield, for plaintiff in error.

C. C. DREMAN, of Belleville, and D. W. JOHNSTON, of
Taylorville, for defendant in error.

Mr. JUSTICE MURPHY delivered the opinion of the
court:

The arbitrator and Industrial Commission found that
William Cruthis, an employee of the Superior Coal Com-
pany, was not entitled to workmen's compensation for the
loss of the sight of his left eye. On *certiorari*, the circuit

court of Macoupin county held the finding of the commission was against the manifest weight of the evidence and set the commission's order aside. It was further found that the facts appearing in the record were sufficient upon which to base a finding as to the amount of award, and pursuant to authority given in subparagraph (2) of paragraph (f) of section 19 of the Workmen's Compensation Act (Ill. Rev. Stat. 1945, chap. 48, par. 156) the court fixed the amount and directed its payment. Leave to prosecute a writ of error to review such judgment was allowed.

On May 22, 1944, and for five years prior thereto, Cruthis was employed by the Superior Coal Company. His duties included the setting of props to support the roof after the coal had been removed. He testified that on May 22, 1944, while he and his colaborer were engaged in driving a prop to an upright position, a piece of bark or something flew from the prop and struck him in the left eye. He stated that it blinded him for a minute or two and that within the next two days he noticed his vision in that eye was failing. He further testified that prior to the accident, he used his left eye in "sighting" to get the props in proper line, but that since the accident he could not see sufficiently with that eye to get the correct location of the props. Medical experts testifying for the respective parties agreed that the vision of the left eye was so far gone as to constitute industrial blindness.

The evidence upon which the foregoing facts were established is undisputed. The conflict arises in the medical testimony as to whether Cruthis's industrial blindness in his left eye was caused by the accident of May 22 or was produced by something which occurred sometime before. The experts are in fair accord as to the conditions found in the eye, which condition they all say is the direct cause of the loss of vision, but they hold different opinions as to the length of time required for such condition to develop. Those who testified for Cruthis hold the view that

the conditions found in the eye could have developed from the injury or were at least accelerated by it. Those called on behalf of the employer were of the opinion that the conditions found could not have developed so soon after the accident. They were also of the opinion the injury did not aggravate any pre-existing condition.

The commission found Cruthis had not sustained the burden of proof which rested upon him and denied compensation. The circuit court held that such finding was against the weight of the evidence. The sole question in the case is whether the finding of the commission was against the manifest weight of the evidence. In the consideration of such question there will be no attempt to determine which view of the two groups of medical experts was entitled to the greater weight.

Cruthis's first medical examination was by Dr. Engh, a company doctor, two days after the accident. The doctor testified that the sclera, the white outer coat enclosing the eyeball, and the conjunctiva, the mucous membrane which lines the interior surface of the eye lid, were red, but that he did not find any abrasions, lacerations or cuts of any kind on or about the eyeball. He examined Cruthis's eye on two other occasions, both within ten days of the accident. On one of these, Cruthis read a chart from which the doctor ascertained that his vision in the left eye was 20/200ths or less, which is industrial blindness. Dr. Engh was a general practitioner and recommended that Cruthis see an eye specialist.

Arrangements were made by the company whereby Cruthis's eye was examined on July 24, 1944, by Dr. Green, an eye specialist of St. Louis, Missouri. He testified that he found a little congestion of the conjunctiva, that the cornea was clear and that in the iris he found a little cyst-like projection on certain parts of the border of the pupil. By microscopical examination, he determined that the two cyst-like projections were not of the

nature of adhesions from the iris. He did not find any evidence of superficial injury. He testified that by the opthalmascope he examined the inside of the eye and found a central scar which had the appearance of an atrophy of the retina, that it resembled an abnormal pigmented mass. In further description of the interior of the eye, he stated that there were two tissues, one the retina, and underneath it the choroid; that when the retina was atrophied or scarred, the choroid vessels show through, and that such was the condition of Cruthis's eye. The doctor's opinion was that the scar on the retina was the direct cause of the impairment of the vision, but in his opinion the scarred or atrophied tissue was not caused by the injury of May 22, 1944. He stated it could have been produced from any one of several causes, such as diabetes, chronic nephritis and venereal disease. In his opinion the atrophied condition of the retina had its origin in some cause that occurred long before the injury of May 22.

Dr. Waldman, an eye specialist practicing at Belleville, Illinois, testified on behalf of Cruthis. He stated he examined Cruthis's left eye on January 9, 1945; that in his search for a cause for the loss of vision he found that the lids, the conjunctiva and the sclera were negative; he observed that points of the border of the pupil were irregularly marked by small particles protruding into the pupil area. He stated that with the opthalmascope and certain visual tests he ascertained that there was a scar area on the temple side of the retina, that the entire retina and choroid were involved. In his opinion the conditions could have been caused by trauma. On cross-examination, he stated that the atrophied conditions found upon the choroid and retina could have developed either by slow or rapid growth, and that he could not specify which. He further stated that it was doubtful if it would develop within a week after a cause had occurred, but that it would be possible for it to follow the cause within a month. He gave

it as his opinion that there was a direct causal connection between the injury to the eye on May 22 and the condition of the retina and choroid he found on January 9.

The company called Dr. McGoey, an eye specialist practicing at Springfield. He examined Cruthis's eye on April 23, 1945. On examination of the interior of the eye he found the scarred conditions of the retina, involving the choroid, practically the same as testified to by the other medical experts. He stated that the involved area of the retina was not in a progressive state, and that it was of long standing. In answer to a hypothetical question, he expressed the opinion that the injury of May 22 could not have caused the loss of vision in the left eye so soon after the accident and that the injury had no causal connection with the deteriorated condition of the retina which was the immediate cause of blindness.

One other doctor was called by Cruthis. His testimony was limited to giving the result of a test he caused to be made for syphillis, which was negative.

As previously stated, the medical experts agree that the immediate cause of Cruthis's blindness was the scarred or atrophied condition of the retina and the area around it. The conflict in the evidence is as to what produced the atrophied condition. If Cruthis was industrially blind in his left eye within a week or ten days after the accident, as testified by Dr. Engh, then under the evidence of the medical experts who testified for Cruthis there was a serious doubt whether the injury of May 22 could have developed a scarred or atrophied condition to cause blindness in such a short period of time. The determination of this and related questions involved the weighing of evidence, a consideration of the probabilities and the giving of credit to testimony. This was the function of the commission and its findings on such questions should not be disturbed by the courts, unless it can be said from a consideration of all the evidence that the finding had no substantial foundation

in the evidence, or is against the manifest weight of the evidence. *Peabody Coal Co.* v. *Industrial Com.* 349 Ill. 160; *Panther Creek Mines, Inc.* v. *Industrial Com.* 347 Ill. 348.

It is contended on behalf of Cruthis that the fact that he could, immediately before the accident, see sufficiently with his left eye to line the props and could not make such use of his eye immediately after, is strong evidence outweighing the opinions of the medical experts who testified for the company. This fact was for the consideration of the commission along with all the other facts and circumstances shown. The finding of the Industrial Commission was not only not contrary to the manifest weight of the evidence but was in accord therewith. Its findings have substantial support in the evidence and the trial court erred in setting the order of the commission aside.

For the reasons assigned, the judgment of the circuit court is reversed.

*Judgment reversed.*