(No. 29384.—▮▮▮▮▮▮▮▮)
Mt. Olive & Staunton Coal Co., Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Orville Soens, Defendant in Error.)

*Opinion filed May 21, 1946.*

MEYER & MEYER, of East St. Louis, for plaintiff in error.

C. C. DREMAN, of Belleville, for defendant in error.

Mr. JUSTICE SMITH delivered the opinion of the court:

On petition of plaintiff in error, this court allowed a writ of error to review a judgment of the circuit court of Madison county. The judgment complained of confirmed an award of the Industrial Commission in favor of Orville Soens. Application was filed with the Industrial Commission by Soens for compensation growing out of an accident which occurred on February 23, 1944. On the hearing before the arbitrator, it was stipulated that the relation of employer and employee existed; that both parties were comprehended within the provisions of the Workmen's Compensation Act, and that notice of the alleged accident was given. The only disputed question involved was whether the accident arose out of and in the course of the employment. All other questions were covered by the stipulation.

On the day in question, Soens was employed by plaintiff in error to drive a truck used in hauling refuse from the coal washer operated by plaintiff in error. There were

two truck drivers engaged in this activity. The refuse was collected in a chute or hopper at the washer; it was then dumped into the trucks and hauled a distance of three quarters of a mile, where it was disposed of. The hauling of this refuse did not consume all of the time of the truck drivers. They frequently had short intervals between trips, while a truck load of refuse was accumulating in the hopper at the washer.

Soens went to work for plaintiff in error on January 6, 1943. For some time he alternated between driving a truck, picking sulphur from the coal, and helping in the washer. He had been engaged regularly in driving a truck for some time before the accident. Beneath the washer was a large room containing acetylene tanks, an electric drill press, and other equipment. He testified that while he was waiting for his truck load of refuse, he entered the room beneath the washer to obtain a sandwich from his dinner bucket, which he kept in that room. While eating his sandwich, another employee by the name of Louis Andrews was engaged in drilling holes in metal plates by use of the electric drill press. He testified that after he finished his sandwich, he helped Andrews put the drill bit in the hole; that when Andrews finished drilling the last hole in the plate he was working on, Andrews took the plate off the drill, took the clamps off and attached the pattern plate on the top of another plate to be drilled; that he then put the clamps on that plate; that when Andrews took the plate away from the drill and was attaching the pattern to the other plate, and while he had his back turned, Soens's glove was caught in the drill press and his right thumb was severed from the hand. The arbitrator entered an award allowing him compensation for six weeks' temporary total incapacity. He also made an award for compensation for the loss of the thumb. This award was affirmed by the commission and confirmed by the circuit court.

The sole question presented by the record is whether the injury sustained arose out of and in the course of the employment. It is contended by plaintiff in error that Soens had no duties in the room where the drill press was located; that he was employed solely as a truck driver; that his duties as a truck driver were all outside of that room; that he had no duties in connection with the drill press, and that the accident did not arise out of or in the course of the employment.

Soens's contention is that while he was employed as a truck driver he was accustomed to assisting other men employed about the washer when called upon, and that it was his duty to do so. He further contends that Andrews was his boss and that it was his duty to assist Andrews whenever he needed assistance. This is purely a question of fact, depending upon the weight of the evidence. Soens testified that the superintendent told him when he was employed that Andrews was the boss; that the superintendent did not tell him what kind of work he had to do as a truck driver. He further testified that the superintendent told him "to help the men out, he didn't say specifically in the washer, but said to help them out if in trouble;" that at one time previous to the day in question, the superintendent had directed him to assist other men in setting up a ladder; that he could not say that Timmerman told him to help other men out when he was not driving the truck, "but I understand that's the way it was." He further testified that on prior occasions he had assisted Andrews with his work in this particular room; that he had helped him fix a chain and had helped him carry some plates; that when he first started to work he asked the superintendent what his duties were; that the superintendent directed him to pick sulphur the first and second days; that the third day, when he asked the superintendent about his duties, he was told to "ask Louis Andrews;" that Andrews did give him directions as to picking sulphur; that he had

helped Andrews with other plates on previous occasions and on the day before the injury; that Andrews did not say anything to him about not helping. Also, that he had helped Andrews drill some angle irons before the day in question.

The other truck driver, who worked with Soens, testified that Andrews was the number-one man in the washer; that he never gave the witness orders "outside of just asking me for a lift or something like that;" that Andrews was sort of a handy man who kept the washer room; that if any of the other men asked for a lift from the truck drivers, they always got it. A former truck driver who, at the time of the accident, was employed in other activities at the washer, testified that while Andrews never gave any instructions, "all he would tell me is whenever anybody needed any help, why to help them, and I always did." Another man employed as a maintenance man and doing maintenance work around the washer testified that Andrews was in charge of the washer; that he himself had asked the truck drivers "for a lift and they have helped me;" that he had seen Soens help Andrews, both before and after the day of the accident. He saw him assist Andrews in making up a chain, saw him help on the screen plate, and on the drill.

The superintendent and Andrews testified for plaintiff in error. The superintendent denied ever giving Soens any instructions to the effect that he was to assist other men in their work about the washer, and denied that he told him Andrews was his boss, or directed him to inquire of Andrews as to his duties.

He further testified that under the contract between the operator and the employees, he, as superintendent, had the right to direct employees to do other types of work outside of their regular classification. He named four other employees, evidently employed in the same classification as Soens, who had assisted Andrews when working

on the drill press. Andrews testified that he did not ask or direct Soens to assist him in any manner in the operation of the drill press on the day of the accident. Andrews was later called as a witness by Soens. Soens offered to prove by Andrews at that time that he had assisted Andrews in drilling some plates on the drill press in question. An objection, however, was sustained by the arbitrator to this offer.

From this reference to the testimony, it clearly appears that the question whether the employee was engaged in the line of his employment at the time he received his injury, and whether such injury arose out of and in the course of his employment, is a controverted question of fact, depending upon the weight of the testimony. The rule is well settled that this court cannot reverse the findings of the Industrial Commission unless such findings are manifestly against the weight of the evidence. (*Grola* v. *Industrial Com.* 388 Ill. 114; *Superior Coal Co.* v. *Industrial Com.* 373 Ill. 504; *Chicago Park District* v. *Industrial Com.* 372 Ill. 428.) The determination of controverted questions of fact is for the commission. Its factual findings will not be disturbed unless against the manifest weight of the evidence. It is obvious from the testimony of Soens that even though he may never have been given any specific instructions to assist Andrews, the man in charge of the washer, he may well have understood that it was his duty to assist him, and that he was expected to do so, whether specifically so requested or not. According to his testimony, he had assisted Andrews on previous occasions in the operation of the drill press. In this he was corroborated by a disinterested witness. If the commission believed this testimony, it cannot be said that the award is against the manifest weight of the evidence. Whether Soens had or had not been given the instructions and directions to which he testified, even though such testimony was denied by the superintendent and Andrews,

the commission had the right to accept his testimony upon this controverted issue of fact. If the commission believed his testimony, as it had a right to do, then it cannot be said that there is no evidence to support the award. Whether he was specifically directed or merely permitted to assist Andrews, this would not take him out of the scope of his duties, or render the accident one arising outside of and beyond the course of his employment. It is our conclusion that the award is not against the manifest weight of the evidence, and that this is not a case in which we would be justified in substituting our judgment as to the weight of the evidence for that of the commission on this sharply controverted issue of fact.

The judgment of the circuit court of Madison county is affirmed.

*Judgment affirmed.*