(No. 30253.

JOYCE BROS. STORAGE AND VAN COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JAMES A. MARSHALL, Defendant in Error.)

*Opinion filed March 18, 1948.*

HENRY L. KANE, of Chicago, for plaintiff in error.

ANDALMAN & ANDALMAN, of Chicago, (LEONARD J. BRAVER, of counsel,) for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

James Marshall filed with the Industrial Commission an application for adjustment of claim alleging that he sustained accidental injuries on September 1, 1943, arising out of and in the course of his employment by Joyce Bros. Storage and Van Company, hereafter referred to as defendant. An arbitrator found that the injury was compensable and awarded claimant $17.63 per week for a period of twenty-five weeks for temporary total incapacity and the further sum of $681.37 for necessary medical, surgical and hospital services. Upon a review of the record made before the arbitrator, the Industrial Commission found that claimant did not sustain injuries arising out of and in the course of his employment, set aside the award of the arbitrator and dismissed the claim. The circuit court of Cook County reversed the decision of the Industrial Commission and remanded the cause to the commission, with directions to find that claimant sustained injuries arising out of and in the course of his employment and to enter an award computed on the testimony appearing in the record. Subsequently, the Industrial Commis-

sion made findings and entered a decision and award in favor of claimant, in conformity with the mandate of the circuit court. The amount and coverage of the award was the same as previously entered by the arbitrator. Upon *certiorari* proceedings, the superior court of Cook County confirmed the decision and award of the Industrial Commission, entered pursuant to the mandate of the circuit court. We have allowed defendant's petition for writ of error for a further review of the record.

The decision of the Industrial Commission and the judgments of both the circuit and superior courts are properly reviewable by this court. The judgment of the circuit court was not a final and appealable order, since the cause was remanded to the commission for the entry of certain findings and the computation of the award. (*American Manganese Steel Co.* v. *Industrial Com. ante*, p. 272; *Thompson* v. *Industrial Com.* 377 Ill. 587; *Brown Shoe Co.* v. *Industrial Com.* 371 Ill. 273; *Dunavan* v. *Industrial Com.* 355 Ill. 444.) The judgment of the superior court being the first final order in the cause, the record in its entirety is now subject to review. (*American Manganese Steel Co.* v. *Industrial Com. ante*, p. 272; *Yellow Cab Co.* v. *Industrial Com.* 333 Ill. 49.) See *Brown Shoe Co.* v. *Industrial Com.* 374 Ill. 500; *Gray Knox Marble Co.* v. *Industrial Com.* 363 Ill. 210.

The facts essential to a determination of the issues may be briefly stated. At the date of the accident, claimant was sixty-eight years old and had been engaged as a piano and furniture mover for many years, although he had been employed by defendant for only three or four months. Claimant testified that, on the morning of September 1, 1943, he was assigned to a moving van with three other men and that, while assisting them in unloading a piano, he felt a stitch in his right side and so remarked to his fellow workers. Claimant further related that after a lunch of fried ham he became sick and vom-

ited; that when the van returned to the warehouse shortly after lunch he again vomited; that he was sick and took it easy the rest of the afternoon, and that, at quitting time, he went straight home and lay down without eating any dinner. Sometime after eight o'clock in the evening, he felt something give way on his right side. A friend took him to a local hospital where Dr. Guy Van Alstyne performed an emergency operation for strangulated hernia. Because the wound became infected, claimant experienced a slow recovery. He remained at the hospital for sixty-six days and it was twenty-five weeks before he was again able to accept employment.

Archie Fournier, a witness for defendant, presented a somewhat different version of the events of September 1, 1943. Fournier was assigned to the same moving van as claimant and testified that they started the day as a three-man crew; that no piano was moved in the forenoon; that claimant became ill after lunch; that after lunch they picked up a fourth man at the warehouse and proceeded to move four rooms of furniture and an upright piano; that the only piano they moved all day was the piano in the afternoon, and that, during the afternoon, defendant carried light articles and rested much of the time. Receipts for the delivery of furniture corroborate Fournier's testimony that the only piano they moved on September 1 was delivered in the afternoon.

In October, 1943, an agent of defendant's insurance carrier took a signed statement from claimant at the hospital. In the five-page statement, claimant made no mention of moving a piano, ascribed his sickness to the lunch of fried ham, stated that he first vomited at the warehouse, admitted a prior and similar rupture on his right side in 1910, asserted that he had experienced no pain or protrusion in either groin from the time of his operation in 1910 until the evening of September 1, 1943, and speculated that the return of the rupture was caused by a gradual

weakening of the abdominal wall over the years, coupled with an upset stomach following the lunch of fried ham. On cross-examination, claimant admitted the prior hernia in 1910. He stated that the earlier injury occurred while he was moving a piano; that the hernia was on the right side; that, after the operation, he wore a truss for six months, and that, in the intervening thirty-three years, he had no pain, protrusion or any other indication of the existence of a hernia.

The remaining testimony of importance consists of the deposition of Dr. Van Alstyne and hospital records containing his operative findings. Dr. Van Alstyne testified that he performed the operation on Marshall and that there was a direct causal relationship between claimant's work as a mover on September 1, 1943, and his condition of strangulated right inguinal hernia. Pertinent extracts from the operative findings of Dr. Van Alstyne are as follows: "Many adhesions encumbered due to former herniorrhaphy * * *. A large thickened hernial sac found confining the tunico vaginalis testis (so-called congenital type). * * * The sac contained unusual adhesions and a large amount of omentum * * *. Dissection of former operative changes was done * * *."

The employer contends that claimant has not satisfied the statutory requirements relating to eligibility for compensation in hernia cases and that the original decision of the Industrial Commission to that effect is not contrary to the manifest weight of the evidence. Industrial injuries involving hernia have been singled out for special legislative consideration. Section 8(d-1) of the Workmen's Compensation Act provides: "An injured employee, to be entitled to compensation for hernia, must prove: 1. The hernia was of recent origin; 2. Its appearance was accompanied by pain; 3. That it was immediately preceded by trauma arising out of and in the course of the employment; 4. That the hernia did not exist prior to the accident."

(Ill. Rev. Stat. 1947, chap. 48, par. 145.) All the concomitant circumstances and conditions prescribed by the statute must be proved by a preponderance of the evidence. (*Wagner Malleable Iron Co.* v. *Industrial Com.* 358 Ill. 93; *Mirific Products Co.* v. *Industrial Com.* 356 Ill. 645; *Western Electric Co.* v. *Industrial Com.* 349 Ill. 139; *Cuneo Press Co.* v. *Industrial Com.* 341 Ill. 569.) Where the applicant fails to establish that the hernia was of recent origin and did not exist prior to the accident, no compensation may be awarded. *Wagner Malleable Iron Co.* v. *Industrial Com.* 358 Ill. 93; *Cuneo Press Co.* v. *Industrial Com.* 341 Ill. 569.

Claimant's frank admission that he sustained a similar hernia in the same place in 1910, taken together with the surgeon's operative findings of a large thickened hernial sac containing unusual adhesions, points strongly to the conclusion that the hernia did exist prior to the accident. Claimant's argument that a hernial sac may exist without a hernia is not convincing, especially when the sac is determined to be large and thickened and to contain unusual adhesions. Claimant further contends Dr. Van Alstyne's expert medical opinion "that there is a direct causal relation between the work the man was doing and the condition in which he found himself on September 1st, 1943," is determinative of the issue involved. In the first place, the testimony is largely refuted by the doctor's own operative findings. Secondly, it must be observed that the doctor did not express an opinion that the hernia did not exist prior to September 1 or state that the work required of claimant cause the hernia to appear. The condition in which claimant found himself was strangulated right inguinal hernia and it is perfectly possible that the lifting done by claimant in performance of his duties resulted in an enlargement and strangulation of a pre-existing hernia, rather than causing a new hernia to appear. The statute ignores the causal relationship between the employment and the

aggravation of an old hernia and establishes the prerequisite that the employee's work must result in a new hernia.

The strongest evidence in support of the contention that the hernia was of recent origin and did not exist prior to the accident is claimant's testimony that he had no pain or protrusion in the groin or any other indication of a hernia during thirty-three years of hard physical work prior to the injury of September 1, 1943. Obviously, this testimony does not constitute a preponderance of the evidence. At best, the evidence is merely conflicting, and we do not disturb findings of fact made by the Industrial Commission where they are not manifestly contrary to the weight of the evidence. (*Caterpillar Tractor Co.* v. *Industrial Com.* 397 Ill. 474; *Mt. Olive & Staunton Coal Co.* v. *Industrial Com.* 393 Ill. 615.) In addition, under the special provisions of the statute, the burden was on claimant to show by a preponderance of the evidence that the hernia was of recent origin and did not exist prior to September 1, 1943. This, he failed to do.

The judgment of the superior court of Cook County is reversed and the award of the Industrial Commission set aside.

*Judgment reversed; award set aside.*