(No. 31529.—

LAWRENCE BOUTWELL *et al.,* doing business as B. & W. Coal Company, Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THOMAS P. TAPP, Defendant in Error.)

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

STONE & FOWLER, of Marion, for plaintiffs in error.

K. C. RONALDS, and RALPH W. CHOISSER, both of Harrisburg, for defendant in error.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Plaintiffs in error sought review of a decision of the Industrial Commission affirming the award of the arbitrator, and an order of the circuit court of Saline County confirming the decision of the commission and sustaining the motion of the claimant, Thomas P. Tapp, to quash the writ of *certiorari*. The award found all jurisdictional facts proved and awarded the employee $20.80 per week for three hundred weeks and an annual pension of $499.20, payable in monthly installments as provided by law. We granted a writ of error to review.

Respondent, Thomas P. Tapp, a coal miner, age fifty, married, with two children under sixteen years of age, was injured on January 30, 1948, at the mine of the B. & W. Coal Company, where he had been employed for about five years. At the time of his injury, he was driving a spike team of mules and was sitting sideways over the front end of the coal car. While driving down hill, the mule's hames caught on some niggerheads hanging down from the roof, the cart overtook the mule, and claimant was caught between the posterior portion of the mule and the cart and was thrown into and against the dump hook on the cart, which caught him on the left side, resulting in the fracture of several ribs. He testified that he was also struck in the back at the left hip joint, and that it had been giving him trouble ever since. Claimant was hospitalized for forty-three days and was released for further work the last of April, 1948. He resumed similar work unsuccessfully, owing to the condition of his back and the numbness in his left leg, complaining he could not draw his leg up under the car or sit cramped up on the car as required. He was then put to work building brattices but could not move the

rock and bead. He was placed on a motor for a short time and was then told he would have to go back to driving mules. He tried this but was unable to bend over to get under the niggerheads in the mine and, in attempting to do so, bumped his head several times and struck his left side at the hip joint. He made no attempt to work after May 18 or 19, 1948, and the claimant testified he was totally unable to work, that his back pains him, even lying in bed; that his left leg is numb and feels like it is asleep and a heavy weight; that he can do no manual labor without suffering pain, and that his hip hurts where it "ties in." Since the injury and just prior to the hearing before the arbitrator, claimant had been hospitalized in the Harrisburg hospital and in the Eldorado hospital, where he had been confined five weeks. Claimant contends he had never had trouble before and has suffered continuous loss of weight.

Plaintiffs in error, on the other hand, maintain the award is unfounded for the reason the employee has recovered from his injuries, and that the symptoms of which he now complains did not arise out of, or in the course of, his employment. This is the sole question presented and depends, except for claimant's subjective testimony, upon the opinions and evidence of the medical experts, in which there is a decided conflict.

The medical testimony on behalf of the claimant before the arbitrator consisted of that of one doctor. Two doctors testified for the plaintiffs in error, including the doctor who was originally the attending physician. Upon review before the Industrial Commission, the plaintiffs in error took further testimony of the latter and introduced further testimony of another doctor who had not previously testified. The proof on behalf of claimant discloses that the examining physician took an X ray of the chest on September 24, 1948, and made a physical examination on October 10, 1948. He had not seen claimant before this time as a patient. His

examination revealed incomplete, healed fractures of the fifth, sixth, and seventh ribs at their lateral curvature, residual pneumonitis and signs of typical residual pleurisy. On October 10, 1948, the patient's heart was normal but he could hear râles, which are not present in normal lungs, in the lower lungs on the left side in the inferior portions of the left lung cavity, and markings of the left lung, typical of the low grade infection, described as pneumonitis, an inflammation of the lung tissue. The doctor stated it was difficult to say whether or not these fractured ribs produced the pneumonitis, although, in his opinion, if the trauma to the ribs were severe enough to affect the pleura it could produce such a condition, although it can be produced by infection. He further stated, as his opinion, that on October 10, 1948, when examined, claimant was not physically qualified to perform manual labor, although the ribs had healed. In support of claimant's position and to refute the contention of plaintiffs in error that the claimant had tuberculosis prior to the injury, claimant introduced a chest X ray, identified as taken in November, 1947, about two months before the accident, by the Public Health Department of the State of Illinois, with findings thereon of no evidence of significant tuberculosis and a classification as essentially negative.

The original attending physician testified that, in his opinion, based upon treatments and observations prior to the accident, he "thought the man could have been suffering from pulmonary tuberculosis." He admitted, however, that he made no positive diagnosis. He made X rays after the accident but did not have them with him, explaining they had been turned over to the doctor who testified on behalf of claimant. These X rays were not introduced in evidence by either side. He further testified after the accident he noticed dullness over the left chest posteriorly in the base and some moist râles present over the base of the left lung. He had noticed the râles but not the dull-

ness prior to the accident, although on cross-examination the witness stated he first noticed the râles in Thomas Tapp several weeks prior to the time of the hearing. He discharged the patient as cured and released him for work on May 3, 1948, being then of the opinion there was no residual disability, the ribs having healed satisfactorily. He was of the opinion there was no connection between the pains claimant complained of at the time of the hearing and the injury received, although later, on cross-examination, he stated that if a traumatic injury is so severe as to crush or fracture three ribs, "I would make a connection between the injury and the condition," and on redirect examination he stated, "I could not definitely characterize it as due to an injury."

Another doctor testified on behalf of the company that he examined claimant on February 9, 1949, over a year after the accident, and ascertained from his complaints that he was weak, felt exhausted, suffered pain and discomfort in the left side of the chest, low back pain, numbness and some loss of sensation in the left arm and leg, that his left leg was heavy and that he had to make an effort to drag it along when he walked. He discovered some dullness but no râles; performed a tactile examination by taking a pin and pricking the skin, and that Tapp could scarcely feel the pin on the left side from the shoulder on down. The laboratory examinations showed two plus albumin, indicating Bright's disease or chronic nephritis while his blood was practically normal. X rays were taken on this date and indicated pleural adhesions and bronchial thickening with scar tissue. One X ray showed noticeable lipping of the margins of the lumbar spine in mild form, indicating hypertrophic arthritis or repair tissue. This, in the doctor's opinion, was caused by infection and had no relation to the injury in question, and was much older than the injury. He further expressed the opinion claimant had an old inactive pulmonary tuberculosis which was pre-existent and that it had no connec-

16

tion with the injury and his diagnosis of Bright's disease accompanied with hypertension had no connection therewith. He did, however, find a hemiplegia or paralysis of the left arm and leg, which was, in his opinion, caused by brain hemorrhage or an embolism lodged in the brain, a frequent result of hypertension, which can be caused by head trauma but not chest trauma; all of which had no connection with the injury. He stated he did not mean claimant was not disabled, but did not see the injury as a causative factor.

Upon the hearing before the commission, further medical testimony was introduced. The attending physician, who previously testified on behalf of the company, and still another doctor, who had not previously testified, both gave testimony before the commission. This latter witness stated he examined claimant on June 8, 1949, and that he complained of pain in the lumbo sacral portion of the back to the crest of the ilium on the left side, and also complained of being weak and wobbly and of numbness in the left leg. His examination revealed that he was undernourished, frail, poorly developed and undersized and had some disseminated arthritis, some lipping of the third, fourth, and fifth lumbar vertebrae, as well as the sacrum and sacroiliac joints. He stated the arthritis had the appearance of being long-standing and a type which developed gradually and slowly and that he found no residual disease of any kind resulting from a traumatic injury.

We have recited the nature of the testimony somewhat at length to illustrate the conflict which existed in the record, even among the medical experts called on behalf of plaintiffs in error.

It cannot be said the evidence is without conflict on the material issues and to hold this award is based merely upon guess and conjecture would be to decide that the pathologies, as shown by record, were due to pre-existing diseases,—conditions which are not proved by the testi-

mony,—and to so hold would, in turn, be a finding based on mere speculation.

Here, claimant was injured in the mine when caught between the rump of a mule and a dumpcart. He had three ribs fractured and his chest crushed, requiring hospitalization of over forty days' duration. He suffered continuous loss of weight, there was some involvement of the lumbar vertebrae, the sacrum, and the sacroiliac joint. He has been unable to work since the accident, and there is little question he is completely disabled and permanently incapable of work. The contention is made by the respondents that the present condition of claimant was caused by pre-existing illnesses, yet there is no positive diagnosis made prior to the accident by anyone, not even by the attending physician, concerning the alleged pre-existing conditions. It is a permissible inference from the testimony that if a pulmonary tuberculosis existed prior to the injury, it was an old, inactive condition which was reactivated by the traumatic injury. There is ample evidence in the record to sustain the finding that if the pleura had been penetrated the trauma could cause the conditions complained of, although some of the company's medical experts testified that the paralysis could only be produced by head trauma or by hemorrhage or an embolism. Even assuming the claimant had a pre-existing condition, which is not definitely established here, and that it was set in motion or "lighted up" or aggravated by the injury, and the injury is admitted in this case, the injuries complained of are compensable, if the finding is not against the manifest weight of the evidence. *Corn Products Refining Co.* v. *Industrial Com.* 402 Ill. 250.

It is not the province of this court to draw the inferences from the evidence and to determine conflicts arising in the testimony. When opinions of the medical witnesses are conflicting, it is difficult for lay opinions to determine with the requisite nicety upon which side the weight of the

18

evidence falls. *Macon County Coal Co.* v. *Industrial Com.* 374 Ill. 219.

We have repeatedly held that this court cannot reverse the findings of the Industrial Commission unless the findings, as made by the commission, are manifestly against the weight of the evidence. (*Mt. Olive & Staunton Coal Co.* v. *Industrial Com.* 393 Ill. 615; *Superior Coal Co.* v. *Industrial Com.* 373 Ill. 504.) The court will not undertake to decide where the preponderance of evidence lies or which medical experts are more worthy of belief, and will not substitute its judgment for that of the commission unless the decision of the commission is clearly and manifestly contrary to the weight of the evidence. (*Moergen* v. *Industrial Com.* 394 Ill. 383.) The determination of where the preponderance lies is pre-eminently the function of the commission. (*Chicago, Wilmington & Franklin Coal Co.* v. *Industrial Com.* 400 Ill. 60.) From a careful review of this record we cannot say, as a matter of law, there is no evidence upon which to base the award, nor are we able to say that the finding is against the manifest weight of the evidence.

The judgment of the circuit court of Saline County, confirming the findings and conclusions of the Industrial Commission and quashing the writ of *certiorari*, is therefore affirmed.

*Judgment affirmed.*