(No. 39991.— )

THE CITY OF COLLINSVILLE, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(DALE E. LAUTH, Appellee.)

*Opinion filed January 19, 1967.*

O'CONNELL & WALLER, of East St. Louis, (JOHN F. O'CONNELL, of counsel,) for appellant.

OEHMKE, DUNHAM, BOMAN & LESKERA, of East St. Louis, (THOMAS Q. KEEFE, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from an order of the circuit court of Madison County affirming the decision of the Industrial Commission awarding compensation benefits to claimant, Dale E. Lauth, for injuries sustained while employed as a laborer in the department of public works of Collinsville, Illinois. The compensation benefits awarded by the arbitrator, and confirmed by the commission and the circuit court, consisted of a sum for necessary medical expenses, 56½ weeks temporary disability and 70 weeks permanent disability, for loss of the use of the left leg.

The sole question presented on review is whether claimant's injuries were caused by an accident arising out of his employment. The record discloses that on September 28, 1960, claimant, a man 60 years old, was employed by the city of Collinsville in the water and sewer department. At approximately 2:30 P.M. he was unloading a rotary type lawnmower from a pick-up truck by sliding it down a board. The board broke causing the mower to fall on him, throwing him to the ground on his buttocks. When he arose, he felt a pain in his back and promptly reported the accident to his supervisor who noted the accident but did not then, or at any time thereafter, offer to send claimant to a doctor.

During the following week, claimant's back continued to trouble him and on October 3 he visited a Dr. Blaylock in St. Louis, who took X rays and advised him, in claimant's words, to "take some aspirin, stuff like that." Although his back "never did lapse from hurting" claimant continued to work for the city cutting grass for a short period and then "closing valves and watching gauges" in the sewer plant during that winter. In May of 1961 he returned to Dr. Blaylock who took more X rays and prescribed more pain pills.

In the summer of 1961 claimant was transferred to the street department where he had worked prior to 1960 and where his work involved more physical exertion than was

required in the old job. In September, still complaining of back pains, he went to a Dr. Morrison, his family physician, who gave him additional pain pills. He continued his visits to Dr. Morrison on a periodic basis until December, 1962. Each time he "would talk about" his back but no treatment other than the pain pills was undertaken.

Claimant was hospitalized on June 4, 1962, by a Dr. Mueller, whom claimant had gone to see earlier that year concerning his "nerve problems". The hospitalization was in connection with these nerve problems, and during his seven weeks confinement in the hospital he underwent "shock treatments" similar to the shock treatment he had in 1956 and 1957. He also received several "shock treatments" on an out-patient basis after being released from the hospital. On the date of his hospitalization, June 4, 1962, claimant quit work and had not returned up to the date of his hearing before the commission.

In December of 1962, Dr. Morrison, upon claimant's continued complaints of back pain, hospitalized him and called in Dr. Cole, an orthopedic surgeon, for consultation. Claimant gave him a history of having injured his back in September 1960; of having seen doctors in St. Louis; of having X rays taken, and that he had no prior trouble with his back. Upon examination, Dr. Cole found that claimant had pain in the lumbar area of his back, pain in his left leg, stiffness in his back, and loss of left knee reflex. He took X rays and performed a myelogram which indicated claimant had a disc lesion between vertebrae L4 and 5. Both doctors agreed that he should have an operation early in January. He was fitted with a lumbosacral support and allowed to go home for the Christmas holidays.

Claimant returned to the hospital after the holidays and on January 9, 1963, Dr. Cole performed surgery (a laminectomy) upon him. At the time of surgery, the nerve roots between L4 and 5 and between L5 and S1 were explored; at L4 and 5 a ruptured disc and considerable adhesion

formation were discovered. The disc material was removed. Up to October of 1963, claimant saw Dr. Cole periodically for post-operative care, during which time his back pains and stiffness lessened and his left knee reflex returned.

On the arbitration hearing claimant testified that his back was now "in pretty fair shape"; that he still had a "little pain" in his left leg; that he had "been working around the yard taking it easy", and that he had not applied for re-employment with the city. He introduced into evidence receipts for paid doctor bills covering his periodic visits to Dr. Morrison, and several unpaid medical bills.

The employer did not introduce any evidence. The only medical testimony in evidence was that of the surgeon, Dr. Cole, who testified, in response to an appropriate hypothetical question, that in his opinion "the accident of September, 1960, could have been the cause of this disc that we found in surgery on January 10, 1963," and that while he wouldn't expect a man with a ruptured disc to work steadily, "it is possible it could happen." He further testified, on cross-examination, that "it was possible that shock treatments could cause a ruptured disc such as the claimant had." He also stated that it was his opinion that claimant could have returned to work as of June, 1963.

The question of the medical causation of the claimant's injuries is one of fact for the Industrial Commission to decide, and its findings in such respect will not be disturbed on judicial review unless such findings are against the manifest weight of the evidence. *Moergen* v. *Industrial Com.* 394 Ill. 383; *Boutwell* v. *Industrial Com.* 408 Ill. 11; *Hunter Packing Co.* v. *Industrial Com* 1 Ill.2d 99.

The evidence adduced at the hearing herein, gave rise to two reasonable inferences with respect to the medical causation of claimant's injuries. The latter's ruptured disc could either have been due to the lawnmower falling on him or to the shock treatments he received. The commission, after considering all the evidence, drew the former

inference and concluded that claimant's injuries were caused by the accident which arose out of his employment.

In *Farace* v. *Industrial Com.* 34 Ill.2d 80, we held that it is within the sphere of the commission to draw reasonable inferences and conclusions from competent evidence, both direct and circumstantial, and that we would not discard permissible inferences so drawn by the commission merely because other inferences might be drawn by it. And in *City of Rockford* v. *Industrial Com.* 34 Ill.2d 142, we further held that even when evidence in support of an award is hardly of the most satisfactory kind, we are reluctant to substitute our judgment in these matters for that of the commission; that we do not weigh conflicting evidence, nor discard permissible inferences drawn by the commission merely because we might have drawn opposite ones.

Although the resolution of factual matters is the province of the commission to be disturbed by us only in those instances where its finding is against the manifest weight of the evidence, the employee has the burden of proof (*Cauhan Sheet Metal Corp.* v. *Industrial Com.* 31 Ill.2d 325) and the award cannot rest on speculation or conjecture. *A. O. Smith Corp.* v. *Industrial Com.* 33 Ill.2d 510.

The record in the instant case contains substantial proof to support the commission's finding that the claimant's injuries were caused by his work-related accident of September, 1960. At the time of the occurrence, claimant experienced immediate pain in his back and promptly reported the occurrence to his supervisor. Thereafter, he continued to complain of back pain from which he sought relief by periodical medical assistance. His subjective complaints of pain were verified upon examination by an orthopedic surgeon and the ensuing operation disclosed that he was suffering from a ruptured disc and adhesion formation. The only expert witness to testify, Dr. Cole, stated that, in his opinion, there could have been a causal connection between

the accident of September, 1960, and the injury complained of. In view of the foregoing, the commission could reasonably find, as it did, that the claimant's injuries were attributable to his accident while unloading the lawnmower. The judgment of the circuit court is affirmed.

*Judgment affirmed.*