(No. 40621.—■)

CARMENA A. BACON *et al.*, Appellants, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CATERPILLAR TRACTOR CO., Appellee.)

*Opinion filed Nov. 30, 1967.—Rehearing denied Jan. 18, 1968.*

MELVIN O. MOEHLE, of Washington, and W. H. BECKWITH, of Peoria, for appellants.

MILLER, WESTERVELT & JOHNSON, of Peoria, (DAVID A. NICOLL, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following the death of Cloyde A. Bacon, an employee of the Caterpillar Tractor Company, caused by a heart attack suffered while at work, decedent's wife and children filed an application for adjustment of claim with the Industrial Commission. The arbitrator of the Industrial Commission, in a hearing on the application, found the petitioners had failed to prove that the decedent sustained accidental injuries arising out of and in the course of his employment resulting in his death on October 24, 1963. Claim for compensation for the death of the employee was denied. Upon review before the Commission, additional evidence was introduced and oral argument had and the Commission sustained the arbitrator's decision. The circuit court of Peoria County affirmed the Commission and petitioners bring this appeal.

Cloyde A. Bacon, 57 years of age, had worked for the Caterpillar Tractor Company for about 27 years. He had a wife and two children. On October 24, 1963, he left home about 6:15 A.M. To his wife he "seemed as well as he did the day before." He had not been under the care of any physician nor had he received any treatment for a heart or cardiac condition prior thereto. Shortly before starting work at 7:30 A.M., he spoke to his foreman who said he noticed nothing unusual about Bacon. A fellow worker said he saw Bacon get a U-shaped piece of equipment about 23 inches long from a box about 7 feet away and across the aisle, and that Bacon put it on his work bench. He estimated the piece to weigh about 18 or 20 pounds. No one saw Bacon leave his bench but his foreman was called to First Aid at about 8:00 A.M. where he found him lying on a cot being attended by a nurse on duty. An ambulance was called and he was removed to a hospital where he was pronounced dead at 8:55 A.M.

The coroner's physician performed an autopsy and testified that the decedent had an old scarring in his heart, right ventricle, and had a clot in his anterior coronary

vessel with dead portion of the heart called "infarct" distal to this clot. There was marked sclerosis or hardening of the coronary blood vessels as well as the rest of the blood vessels in the body.

Petitioners called Dr. Milton H. Kronenberg, respondent's medical services manager under whose control the company's medical and first aid records were kept, and he testified that there was a nurse's memorandum of the October 24, 1963, incident which indicated that the decedent "walked into first aid very pale, tried to cough from feeling of pressure, stated he has had the pain for the last two or three days. Oxygen was administered and he was sent to the St. Francis Hospital emergency room by company ambulance at 8:08 A.M."

The nurse testified to making the memorandum and a first aid card, which card was unavailable because she could not find it. The foreman stated that he did not report to anyone in the medical department concerning decedent's death as it was not customary for him to do so.

Dr. Julio Barron said he treated the decedent for a respiratory infection in March, and in April operated on the patient to correct a left inguinal hernia, and last saw him in July 1963. His opinion in answer to a hypothetical question was that the heart attack could have been precipitated by the decedent's activities at work on the day in question. On cross-examination he admitted that his opinion was based in part upon his previous contacts as decedent's physician and that prior to the herniotomy he concluded that decedent had a generalized arteriosclerosis or arthrosclerosis of the cardiac muscle based on symptoms such as headaches, dizzy spells, forgetfulness, and fluctuating blood pressure. In his opinion there were a number of factors which precipitated the patient's death—general physical condition and physical strain at time of death. Assuming that there was no exertion of any kind, he agreed, death could have occurred. He admitted having had no

special training in cardiovascular diseases or in the care and treatment of such cases.

Dr. Harold F. Diller gave an opinion, in answer to a hypothetical question, that decedent's action in lifting, carrying a twenty-pound object a distance of 7 feet, and placing it on a bench 3 feet high, could precipitate a heart attack and cause his death. On cross-examination he said that the individual, because of his pre-existing condition, could have died from the effects of arteriosclerosis in the absence of any exertion.

Respondent's witness, Dr. Jack Domnitz, an internist specializing in cardiology, testified that in his opinion there was no causal relationship between the described activity of the hypothetical person and his subsequent death, and that the placing of an object weighing 20 pounds upon an assembly bench 3 feet high and 7 feet from where it was picked up, was not sufficient to have caused a cardiovascular failure.

In *Republic Steel Corp.* v. *Industrial Com.*, 26 Ill.2d 32, we pronounced the controlling principles applicable to heart attack cases when, at p. 45, we said: "We have not heretofore held, and do not now hold that because a heart attack occurs at work, it is automatically compensable. To come within the statute the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor, but only that it was *a* causative factor in the resulting injury. In the absence of such proof, the injury is not compensable."

And again in *Illinois Bell Telephone Co.* v. *Industrial Com.*, 35 Ill.2d 474, 477, we said: "The mere fact that he was at work on the day of his heart attack and left early is not sufficient to establish a causal connection between his employment and his subsequent death, nor is it enough, where one's heart has deteriorated so that any exertion becomes an over exertion, to merely show that he had en-

gaged in some kind of physical activity before suffering the attack. *National Malleable & Steel Casting Co.* v. *Industrial Com.*, 32 Ill.2d 194."

Reviewing the record here, we find that decedent's heart had deteriorated substantially prior to the day of his death and that his blood vessels had hardened extensively so that they produced symptoms of acute sclerosis perceptible as early as April, 1963, when he was examined by Dr. Barron, his physician. Despite the diversity of opinion in the medical testimony relating to the effect of exertion as a cause of his death, the doctors all admitted that death could have resulted in an absence of any exertion because of the extent of decedent's pre-existing heart condition. In light of these factors, the finding of the arbitrator and Commission that petitioners failed to show that decedent's labors were a causative factor of his death is not against the manifest weight of the evidence, since they might legitimately infer that his condition was such that any exertion might be an over-exertion causing death. (*Illinois Bell Telephone Co.* v. *Industrial Com.*) Even if there is the possibility that another conclusion might logically follow from the facts present in this instance, it is within the sphere of the Commission to draw reasonable inferences and conclusions from the competent evidence, both direct and circumstantial, and we will not discard permissible inferences so drawn by the Commission merely becaue other inferences might be drawn by it. *City of Collinsville* v. *Industrial Com.*, 36 Ill.2d 425, 429; see also *Farace* v. *Industrial Com.*, 34 Ill.2d 80.

Focusing our attention on petitioners' complaint that they were denied proper cross-examination, we find that both Dr. Kronenberg and the foreman were called as petitioners' witnesses and that petitioners sought to elicit additional testimony by way of cross-examination asserting that they were adverse witnesses. Petitioners offered no evidence to substantiate this naked allegation. In view of this cir-

602

cumstance, we find no abuse of discretion by the hearing authority in disallowing petitioners' cross-examination.

Petitioners finally claim that they were improperly prevented from introducing secondary evidence which they alleged was part of respondent's medical file and not therein currently included. The evidence in question was the testimony of petitioners' attorney that he had, upon examination of respondent's file, observed the following notations: "10-24-63, stated he had pain for last two or three days to nurse. Foreman Lightbody saw him carry a 20½ pound steering clutch assembly to assembly area and back and had to work on it some more with a small hammer" and made a note of it on the back of his legal file.

Regardless of the propriety of excluding this testimony, it is clear that petitioners were not hurt by such exclusion since the facts contained in the testimony were incorporated into every hypothetical question asked of the medical witnesses. Therefore, we find no error in this regard.

The decision of the circuit court of Peoria County, affirming the Commission's findings, is affirmed.

*Judgment affirmed.*